# BARTLETT v. LOCKWOOD.

## ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 95. Argued December 3, 4, 1895. — Decided January 6, 1896.

In an action in the state courts of New York against the collector of the port of New York, the health officer of that port, and the owners of warehouses employed for public storage, to recover damages suffered by an importer of rags by reason of their having been ordered to the warehouses by the collector and disinfected there, and detained until the charges for disinfection and storage were paid, a ruling by the highest court of the State that the direction of the collector to send the rags to the storehouses was pursuant to the requirement that they should be disinfected, and was in aid of the health officer in the execution of his official power by the observance of the regulations made by him — that the collector gave no order for their disinfection — that the health officer gave no such order — that the defendants assumed to disinfect them without authority, and hence that their charges were illegal — but that, as the collector had properly sent the goods to the warehouses for such

ac ion as the health authorities might see fit to take, the plaintiffs became liable for storage and lighterage, presents no Federal question for review by this court.

THIS was a motion to dismiss a writ of error sued out by the firm of E. B. Bartlett & Co., defendants in the court below, to review a judgment obtained against them in the Supreme Court of New York by the firm of Lockwood & McClintock, for a conspiracy to have certain cargoes of rags belonging to the plaintiffs condemned as unclean and infectious property. With the firm of E. B. Bartlett & Co. was also impleaded as defendant Dr. William M. Smith, sued as an individual, but alleged to be at the time of the transaction Health Officer of the port of New York.

The complaint alleged in substance that in May, 1885, plaintiffs imported by ship Vigilant from Japan, and by barque Battaglia from Leghorn, about three thousand bales of rags of which plaintiffs were entitled to the possession and control; that the defendant Smith, the Health Officer of the port, with intent to injure plaintiffs, conspired with the firm of Bartlett & Co. to have such rags condemned as unclean and infectious property, and to require them to be disinfected under a process used by Bartlett & Co. so that they would be entitled to charge plaintiffs therefor, and to hold such rags until such charges were paid; that Smith, under color of his office, wrongfully and unlawfully caused such rags to be taken from the vessels, and transferred to the place of business of said Bartlett & Co. for the purpose of having the same disinfected, although he, as well as Bartlett & Co., knew that the rags were clean and free from any infectious matter, were not dangerous to health, and did not require to be disinfected; that by reason of such wrongful conspiracy and acts, the rags were taken by Bartlett & Co. and kept by them from June 5 to October 1, during which time they were partially subjected to a pretended process of disinfection, which was ineffectual and worthless for any real purpose of disinfection, and which greatly damaged and injured the rags, but which process was fraudulently and collusively approved of by said Smith, with intent to give Bartlett & Co. the monopoly of the disinfection of

rags, so that they might be able to extort from plaintiffs and others large sums of money for such so called disinfection; that plaintiffs protested against such conduct, demanded possession of their rags, which defendants refused to deliver, until the charges for the transfer and disinfection were paid, by reason of which acts plaintiffs suffered large damages.

The answer of defendants, Bartlett & Co., denied the conspiracy charged in the complaint; admitted defendant Smith to be the Health Officer, but denied "that he had full charge and control over vessels and cargoes coming into the port, except as authorized by the statutes of the State of New York, and the regulations of the United States and the port of New York."

The action was tried in the Supreme Court before a jury, and a verdict rendered for the plaintiffs as against the defendant firm of Bartlett & Co. for $8000, the jury disagreeing as to the defendant Smith. Judgment having been entered upon this verdict, defendants appealed to the General Term, which, upon a hearing before three judges, directed that, upon plaintiffs stipulating to reduce the original judgment in the sum of $1675.16, the judgment as to the residue be affirmed. The stipulation was given, and the judgment reduced accordingly. Defendants appealed from this judgment to the Court of Appeals, which ordered that the judgment should be reversed, and a new trial granted unless plaintiff stipulated to reduce the recovery of damages to $3182.52. 130 N. Y. 340. The case being remitted to the Supreme Court, and the plaintiffs having given the stipulation required by the judgment of the Court of Appeals, judgment was entered in favor of the plaintiffs for $3914.05, to review which judgment defendants sued out this writ of error.

*Mr. Henry W. Goodrich* for plaintiffs in error.

The Federal questions presented are these:

(1) Has the Treasury Department the right, under section 4792 of the Revised Statutes, to order the disinfection of the rags in question? and

(2) Whether a specific designation of the place and manner of such disinfection is required to be given by the Health Officer of the port?

The court held as follows

" The Collector, under his authority, in view of the regulation for disinfection of the rags on the two vessels adopted by the Health Officer, was justified in directing, as he did, the *sending of the rags* to these places, and the expenses of such transfer were presumptively a lien upon the property to which they related. No specific order or direction of the Health Officer is essential for that purpose; it is sufficient that it was done pursuant to regulations within his power, made by him."

Thus, it will be seen that the question is squarely presented as to whether the collector had the right to order the disinfection, the Court of Appeals having held that the collector was justified in sending the goods for disinfection, and that the charges incurred therefor were correct charges and a lien upon the goods, but that he could not order the disinfection without the specific direction of the Health Officer, and hence, that the charges for disinfection were unlawful. The Collector, in ordering the disinfection of the goods, acted under the authority of the Treasury Department, and that authority of the Treasury Department was derived from section 4792 of the Revised Statutes, which directed the Department to aid the state officials, it being remembered that the state officials had designated Baltic Stores and Robbins' Reef as the places, and the process in this suit as the method, of disinfecting.

*Mr. Charles W. Bangs* for defendants in error. *Mr. Francis Lynde Stetson* was on his brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

There is certainly nothing in the pleadings in this case to indicate a Federal question. It is simply an action of con-

spiracy to injure the plaintiffs, and it does not appear from the complaint that the validity of any statute of the United States, or of any authority exercised under the United States, was drawn in question. The answer of the principal defendants, Bartlett & Co., sets up no claim of privilege or immunity under any statute of the United States, or any authority exercised thereunder. Indeed, there is nothing anywhere in the record to indicate that any Federal statute or authority was specially set up or claimed in the state court.

Error, however, is assigned to the action of the court in holding that, under the statutes of the United States, neither the Treasury Department nor the Collector had a right to order the disinfection of the plaintiffs' rags, and also in holding that the rags were not disinfected under the order of such department or the Collector of Customs.

The real question is whether the acts of which plaintiffs complain were done in pursuance of Federal or state authority, or were the unauthorized acts of the defendants themselves. While, under its power to regulate foreign and interstate commerce, the authority of Congress to establish quarantine regulations, and to protect the country as respects its commerce from contagious and infectious diseases, has never in recent years been questioned, such power has been allowed to remain in abeyance; and Congress, doubtless in view of the different requirements of different climates and localities, and of the difficulty of framing a general law upon the subject, has elected to permit the several States to regulate the matter of protecting the public health as to themselves seemed best. Their power to do this was recognized by this court in *Morgan* v. *Louisiana,* 118 U. S. 455. Congress has also confirmed such power by requiring (Rev. Stat. § 4792) that "the quarantines and other restraints established by the health laws of any State, respecting any vessels arriving in, or bound to, any port or district thereof, shall be duly observed by the officers of the customs revenue, . . . and that all such officers of the United States shall faithfully aid in the execution of such quarantines and health laws, according to their respective powers and within their respective pre-

cincts, and as they shall be directed, from time to time, by the Secretary of the Treasury."

Upon the trial it was shown that the Vigilant arrived at the New York quarantine May 30, 1885, with 2920 bales of rags belonging to the plaintiffs. The Health Officer passed her at quarantine, and gave her a permission to proceed, which stated as follows with respect to the cargo : " Cargo general (rags excepted). The vessel has permission to proceed." There was some dispute as to whether the words " rags excepted " were a limitation upon the permission of the vessel to proceed, or a qualification of the words " general cargo;" The testimony of the Health Officer indicated that it meant that the vessel was to be allowed to proceed to her dock, and discharge her cargo, other than rags. Both parties evidently acted upon the theory that these words did not require an unloading of the rags at quarantine, as the vessel was allowed to proceed, and did proceed, to her dock, and on June 1, a permit was granted by the proper Health Officer of the city of New York " to land and store said rags, provided the same be not broken from the bulk in the bales they are now in.". Thereupon plaintiffs went to the custom-house to enter the goods, but the Collector declined to receive the entry, and plaintiffs went with their counsel to Washington, to lay the matter before the Secretary of the Treasury.

At this time, the subject, so far as it came within the jurisdiction of the Federal authorities, was regulated by two circulars issued by the Secretary of the Treasury, the first of which bore date of November 15, 1884, and prohibited " the unlading in the United States of old rags shipped from and after the 20th instant from foreign ports, or countries now or hereafter known to be infected with contagious or epidemic diseases; " and further provided that " no old rags shall be landed at any port of the United States except upon a certificate of the United States consular officer at the port of departure that such rags were not gathered or baled at, or shipped from, any infected place, or any region contiguous thereto." The second circular, dated December 22, 1884, modified previous circulars, and directed that " no old rags,

except those afloat on or before January 1, 1885, on vessels bound directly to the United States shall be landed in the United States from any vessel, nor come into the United States by land from any foreign country, except upon disinfection, at the expense of the importers, as provided in this circular, or as may hereafter be provided." Certain processes of disinfection were specified in this circular, and other directions given for landing and storing rags for the purpose of disinfection.

A letter bearing date January 12, 1885, addressed to the Collector of Customs at New York, in reference to the landing and storage of rags to be disinfected, approved of the selection of the Baltic stores in Brooklyn, which belonged to the defendants Bartlett & Co., as a proper place for that purpose, and directed that " where rags requiring disinfection form part of a cargo, they will be placed on lighters as fast as discharged, and the lighter loads will be taken to the place above designated." It appeared from this letter that Mr. Bartlett, one of the defendants, had written a letter to the department, touching the selection of a warehouse for the storage and disinfection of old rags; that the matter had been referred to the Health Officers of New York and Brooklyn, both of whom agreed as to the propriety of designating the Baltic stores for that purpose. Two days after this letter was written, and on January 14, the Collector of the port made a general order that " on the entry of old rags shipped on and after the 1st instant, and which have not been disinfected prior to importation, the permit to land will have written on the face thereof directions to the inspector to send the rags to the Baltic stores in Brooklyn, by bonded lighters for disinfection;" and further providing that, upon evidence that the rags had been satisfactorily disinfected, an order for their delivery would be made.

These were the regulations in force at the time plaintiffs made their visit to Washington. The Secretary of the Treasury, upon examining the law upon the subject, became satisfied that there was no statute which gave him any authority, except in aid of the Health Officers of the ports, (Rev.

Stat. § 4792,) and in accordance with such conclusion, he telegraphed the Collector of Customs on June 5 that "as to rags per Vigilant, from Japan, which importers claimed were mostly on board prior to January 1st, you are directed to submit all to Health Officer Smith, and to be governed by him in the matter." On June 6 the Collector wrote to the Health Officer notifying him of the receipt of this telegram, and asking to be advised whether, in his judgment, as Health Officer of the port, the rags might, with safety to the public health, be allowed to be landed, and, without disinfection, to go into consumption. In reply to this, the Health Officer wrote upon the same day detailing the result of many medical conferences and sanitary investigations, and stating that he did not claim that it was necessary for the protection of the public health that all rags should be disinfected, although it was "impossible to determine what may and what may not be admitted with absolute assurance of safety," and concluding that it seemed advisable that for the present the rule for the disinfection of rags should be general, and that the rags on the Vigilant should not be an exception to the rule.

He did not, however, give any positive directions that the rags should be disinfected, and testified upon the stand that he gave no order that these rags should be disinfected, either at Bartlett's store or elsewhere.

Before, however, the Secretary of the Treasury had acted in the matter, and before his telegram to the Collector of June 5 had been sent, a general order was issued by the Collector on June 3, directing the inspector on the Vigilant to allow to be landed and sent "to the public store No. —, E. B. Bartlett's, South, all merchandise for which no permit or order shall have been received by him contrary to this direction," with certain exceptions, that did not include rags, in the body of the paper, although the words, "Rags, A. W. H.," were written across the face of it. On June 9, the Collector made a further order that "the inspector in charge of the ship Vigilant from Hiogo, Japan, under general order made June 3, 1885, will allow to be landed and will send on bonded lighters to Baltic stores, (E. B. Bartlett & Co.'s, South,) for

disinfection, all rags for which no permit shall have been received, and will make return thereof, as of an order or permit."

On the following day, June 10, the Secretary of the Treasury, pursuant to his conclusion that there was no statute which gave him any authority in respect to the landing and disinfecting of imported rags, except in aid of the Health Officer, issued a circular or order to all Collectors of Customs, in the following terms: "Whereas it has been conclusively shown to the department that, under existing laws, no general regulation can be legally framed, whereby the disinfection of old rags can be accomplished in foreign ports to the satisfaction of the several health authorities, therefore it is ordered —

"1. That all circulars of this department concerning the disinfection of imported old rags are hereby revoked, and that all old rags hereafter imported from foreign countries shall only be admitted for entry at the custom-house upon the production of permits from the health officers at the ports of importation, duly authorizing the landing of the same.

"2. Vessels carrying old rags, arriving at any United States quarantine, will be detained by the quarantine officers, and held subject to the order of the proper health authorities at the port of destination."

On the same day, Dr. Smith, the Health Officer of New York, gave a certificate that the rags per ship Vigilant from Hiogo, Japan, "to be disinfected, are not from a cholera-infected port."

The rags were accordingly, and in pursuance of the Collector's instructions of June 9, taken to the Baltic stores and there disinfected by the defendants, who paid the lighter's charges, made out a bill for these as well as for disinfecting and storage, amounting to $4904.90, for which they claimed a lien upon the property.

The case of the Battaglia did not differ materially from that of the Vigilant. The barque arrived and was entered at the custom-house on June 6, 1885, with 150 bales of rags belonging to the plaintiffs. On June 9, a general order was made, allowing the discharge of the cargo, but "omitting rags."

On June 11, the Secretary of the Treasury wrote to the Collector at New York, stating that the consignees desired to be covered by the circular of June 10, which placed the control of the disinfection with the Health Officer, and that the department had no objection to this.   On June 13, the Collector enclosed a copy of this letter to the Health Officer, inquiring of him whether he would designate the place and process appropriate.   From a letter written by the Collector to the Secretary of the Treasury, June 19, 1885, it would appear that the Brooklyn Commissioner of Health refused to allow the unloading of the rags in Brooklyn unless they were approved by the Health Officer, and that he therefore ordered, under Rev. Stat. § 2880, the unloading of the rags and their transfer by bonded lighter to Robbins' Reef, for disinfection, provided the health officials of New York city would permit such transfer from the Battaglia to the bonded lighter.   On June 17, the Health Officer certified that the rags were "to be disinfected at Robbins' Reef, if Health Commissioner of Brooklyn will not give permit for Baltic stores."   The charge for the lighterage of these rags and for their disinfection and storage amounted to $409.25, for which amount defendants claimed a lien upon them.

As we have observed already, there is nothing in the record from which a Federal question can be raised in this case. If we look beyond the record, to the opinions of the court, we find that the General Term held —

1. That the Revised Statutes did not authorize the Collector to take possession of these rags as unclaimed goods, and store them in a private bonded warehouse, such as the Baltic stores.

2. That the acts of the Collector could not be justified by sections 4792 and 4793, requiring him to aid in executing the health laws of the State.

3. That the Health Officer did not directly order the seizure of these rags, their conveyance to the Baltic stores in the one case and to Robbins' Reef in the other, and their disinfection by the disinfecting company, the defendants.

4. That the Collector, having no power to send any but

unclaimed goods to the public stores, could not refuse a permit for these goods to land, and cause them to be sent to the public stores to be disinfected at the expense of the owner, and if he did so, he, as well as all other persons who detained the goods because of non-payment of these unauthorized charges, became liable in damages for such unauthorized detention.

5. That the act of the Collector, being without authority, could confer no authority upon defendants to hold the goods, until the charges incurred because of the unauthorized acts of the Collector were paid.

Had the matter rested here it might perhaps have been claimed that the state court had ruled adversely to an authority exercised under the United States, but on appeal to the Court of Appeals the judgment of the General Term was varied to the extent of holding that the defendants were liable only for detaining the goods until the charges for disinfection were paid. That court held in substance:

1. That the direction of the Collector that the rags be sent to the Baltic stores and Robbins' Reef was pursuant to the requirement that they should be disinfected, and pursuant to the direction of the Secretary of the Treasury, and in aid of the Health Officer in the execution of his official power.

2. That the work of disinfection was not conducted under the supervision or control of the Health Officer, nor pursuant to his employment of the defendants, and that the Health Officer had testified that he never gave any order for the disinfection of the rags, and that the defendants assumed to do this work without any direction of the Health Officer, and without approval by him of the efficiency of the work or the charges resulting from it.

3. That this objection was not applicable to the charges for lighterage and storage, and that the Collector was justified in directing, as he did, the sending of the rags to these places, and the expense of such transfer was a lien upon the property.

4. That the charges for lighterage paid by the defendants, according to the custom in such cases, and for the storage for

the time the rags properly remained with them, were a lien upon the property.

5. That, so far as defendants required payment for the further claim for disinfection, as a condition of the delivery, they were chargeable with duress of property, and that the plaintiffs were entitled to recover this amount from them.

The result, then, of this summary of the case is briefly this:

The defendants claimed as a Federal question that they had set up as a defence to this action an authority exercised under the United States, viz., an authority given by the Collector of Customs to disinfect these rags.

In relation to this, the General Term held that the Revised Statutes gave no authority to the Collector to take possession of these goods, and retain possession of them, and that his seizure of the goods, and causing them to be sent to the Baltic stores, was an unauthorized act, and if he caused them to be disinfected, he became liable in damages.

The Court of Appeals, however, held that the direction of the Collector that the rags should be sent to the places where they were taken, was pursuant to the requirement that they should be disinfected, and in aid of the health officer in the execution of his official power, by the observance of the regulations made by him; that *the Collector gave no order for their disinfection;* that the Health Officer gave no such order; and that the defendants assumed to disinfect them without authority, and hence their charges therefor were illegal; but that, as the Collector had properly sent them the goods for such action as the health authorities might see fit to take, the plaintiffs became liable for storage and lighterage.

It follows then that, as the Court of Appeals ruled, as matter of fact, that the Collector never ordered the rags to be disinfected, (a ruling which is not reviewable here, *Dower* v. *Richards*, 151 U. S. 658; *In re Buchanan*, 158 U. S. 31; *Israel* v. *Arthur*, 152 U. S. 355,) and as matter of law, that he had the right to send them to the proper warehouse for disinfection, it appears that the ruling was in favor of and not against the validity of the authority set up and claimed under

the laws of the United States. We may add in this connection that, as it clearly appears that the collector had no authority to order the goods to be disinfected, we, think the Court of Appeals was correct in holding that his somewhat ambiguous order of June 9, directing that the goods should be sent to the Baltic stores for disinfection, should be considered as an order to send the goods for disinfection, in case such disinfection were ordered by the health officer. The disinfection, if ordered at all, was ordered by the health officer, and the charges for this are all for which the defendants were held liable. Whether such order was ever given by the health officer was a question solely within the jurisdiction of the state court.

The writ of error must, therefore, be

*Dismissed.*