## STATE v. SPIVEY.

(Filed February 24, 1903.)

1. JURY—*Juror—Qualifications—The Code, Secs. 1728 and 400.*

A juror is not disqualified by having a suit pending and at issue in court unless it is to be tried at the same term at which he is drawn to serve.

2. HOMICIDE—*Murder—" Cooling Time "—Provocation.*

The doctrine of "cooling time" does not apply where there is no legal provocation.

3. HOMICIDE—*Premeditation.*

Where the purpose or design to kill is formed with deliberation and premeditation, it is not necessary that such purpose or design be formed any definite length of time before the killing.

4. HOMICIDE—*Insanity—Instructions.*

The charge on insanity—that defendant should show to the satisfaction of the jury that at the time of committing the deed he was insane, and did not know right from wrong, or did not know he was doing wrong; that it would not be sufficient for the jury to be satisfied that he was a man of weak mind, but they should be satisfied that he was insane, and did not know right from wrong, before they could acquit him on the plea of insanity; and that if they should be satisfied, from the evidence, that he was insane, as the court had explained insanity, they should acquit—will be held sufficient to make the jury understand their duty; such charge being prefaced with the statement that defendant admits the killing, but says that at the time he killed deceased he was insane, and that his mind was so diseased that he did not know what he was about, or was not conscious of doing wrong at the time of committing the deed, or could not distinguish between good and evil and did not know what he did.

5. HOMICIDE—*Insanity—Issues.*

In an indictment for murder, there being no allegation that the prisoner was insane at the time of the trial, no issue as to insanity need be submitted.

6. HOMICIDE—*Manslaughter—Instructions.*

In an indictment for murder, an instruction that there is no evidence of manslaughter is proper, where there had been no

> fight between the parties, no battery or assault upon the pris-
oner by the deceased, no legal provocation, and even if the lan-
guage used by the deceased just before he was killed could be
perverted into legal provocation, then the cruel and excessive
violence used by the prisoner was out of all proportion to the
provocation.

INDICTMENT against Vance Spivey, heard by Judge *George A. Jones* and a jury, at August Term, 1902, of the Superior Court of HALIFAX County. From a verdict of guilty of murder in the first degree and judgment thereon, the prisoner appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*T. C. Harrison,* for the defendant.

MONTGOMERY, J. The first exception is to the refusal of his Honor to quash the bill of indictment on the ground that one of the grand jurors, who acted in finding the bill, had a suit pending and at issue in the court. The summons was issued and made returnable to the term at which the bill was found, but no pleadings had been filed. The cause was not at issue when the bill was found and the case tried, and even if it had, afterwards, at the same term been brought to issue, under the decision of this court in *State v. Smarr,* 121 N. C., 669, the exception could not be sustained as the case would not be for trial until the next term of court. The Code, Sec. 400. The object of Section 1728 of The Code is to disqualify one to serve as a juror who had a suit to be tried at the same term at which he is drawn to serve as a juror.

The other exceptions are to the charge of the court. The first of them is "that his Honor failed to charge the jury that from the evidence there was not sufficient cooling time between the time that the deceased left the cell and his return when the killing was done." The prisoner and the deceased were convicted criminals, sentenced to terms in the State's

prison and at the time of the homicide confined in the quarters prepared for them on one of the State's farms in Halifax County. They slept in the same box (bunk) and to get in or out of the bed, the deceased had a habit of stepping over or across the prisoner, who occupied the front berth. The deceased, on the morning of the homicide, in getting out of his bed, was threatened by the prisoner and told that if he repeated his act, he (the prisoner) would kill him. The deceased went out of the room, remained five minutes, and in getting back into his place in the box across the prisoner, remarked to the prisoner, "you trifling one-armed scoundrel, if killing is what you want, you can get all you want. I am a killing man." The prisoner himself testified that he had several times before threatened to kill the deceased if he stepped over him again, and that he had prepared and hid under his bunk, a piece of iron eighteen inches long and about three-quarters of an inch thick, weighing about two pounds, with a nut screwed on the end. From the evidence it appeared that he struck the deceased seven licks over the head and face, causing death.

In the light of the evidence in this case the doctrine of "cooling time" does not apply. The deceased did not offer to strike the prisoner and therefore gave him no legal provocation. "Words of reproach and of insult, however grievous, do not make legal provocation, nor do indecent or provoking actions or gestures expressive of contempt and reproach, unless accompanied with indignity to the person as by a battery, or an assault at least. . . . . In the absence of such provocation, there is in the eye of the law no adequate cause for such furious state of mind of the prisoner and excessive heat of blood as will mitigate the crime from murder to manslaughter. In such a case there is no occasion for cooling time." *State v. McNeill*, 92 N. C., 812.

The third exception is "That the court charged the jury

that it would not be necessary for such fixed design to be formed a definite time before the killing." The instruction of his Honor on the question of murder in the first degree was full and clear and correct. He said in part, "An act is done wilfully when done intentionally and on purpose. By premeditation is meant thinking out before hand; and when one thinks over doing an act and then determines or concludes to do it, he has premeditated the act. Malice, in the ordinary sense means ill will or hatred toward another, but in its legal sense it signifies a wrong act done without just cause or excuse. Before you can convict the prisoner of murder in the first degree, it is necessary for the State to show from the evidence, beyond a reasonable doubt, that the prisoner, prior to the time of the killing, formed the purpose or design to kill the deceased, and that this design to kill was formed with deliberation and premeditation, and that in pursuance of said design the prisoner killed the deceased. It would not be necessary for such fixed design to be formed any definite time before the killing. If it was formed but a moment before the killing it would be sufficient; but if formed at the time of the killing it would not be sufficient to make murder in the first degree; for it is essential to constitute murder in the first degree that the fixed purpose or design to kill should have been formed at some time before the killing."

The fourth and fifth exceptions may be treated together. They were directed to those parts of his Honor's charge on the question of the plea of insanity on the part of the prisoner. He instructed the jury "that the prisoner should show to the satisfaction of the jury that at the time of committing the deed he was insane, and did not know right from wrong, or did not know he was doing wrong at the time of committing the deed. It would not be sufficient for the jury to be satisfied that he was a man of weak mind, but they should be satis-

fied that he was insane and did not know right from wrong, before they could acquit the prisoner on the plea of insanity." The jury was further instructed that "if they should be satisfied from the evidence that the prisoner was insane," as he had explained insanity, then they "need not proceed further, but return a verdict of not guilty; but if you are not so satisfied, you will proceed to determine from the evidence of what degree of homicide the prisoner is guilty." The argument on that exception to that part of the charge was that it should have been fuller and more elaborate, and such a charge as was given in the case of *State v. Potts,* 100 N. C., 457. The charge in that case was almost exactly like that in the case of *State v. Haywood,* 61 N. C., 376. There, the instruction was "that if the prisoner at the time he committed the homicide was in a state to comprehend his relations to other persons, the nature of the act and its criminal character, or in other words if he was conscious of doing wrong at the time he committed the homicide, he is responsible. But if on the contrary the prisoner was under the visitation of God and could not distinguish between good and evil and did not know what he did, he is not guilty of any offense against the law, for guilt arises from the mind and wicked will." Pearson, C. J., in the opinion of the court, said: "We fully approve the charge of his Honor upon the subject of insanity. It is clear, concise and accurate, and as it is difficult to convey to the minds of jurors an exact legal idea of the subject, we feel at liberty to call the attention of the other judges to this charge."

The charge in the case before us falls far below that in the case last mentioned, and it does not meet our full approval. But we are inclined to think that the jury understood their duty, especially as his Honor, stating the prisoner's contention, had prefaced his charge on insanity with the words "The prisoner admits the killing, but says that at the time

he killed the deceased he was insane, that his mind was so diseased that he did not know what he was about, or was not conscious of doing wrong at the time of committing the deed, or could not distinguish between good and evil and did not know what he did." The exception is not sustained.

The prisoner's counsel argued in his brief that his Honor should have submitted first to the jury an issue of insanity, as if the prisoner's present insanity was alleged; but the record in the case shows that the plea of insanity made no averment that the prisoner was insane at the time of the trial and on that account could not proceed with his trial. The case of *State v. Haywood,* 94 N. C., 847, was a case in which the present insanity of the prisoner was alleged.

The last exception was that his Honor charged the jury "there is no evidence of manslaughter in this case." We think that his Honor was right in giving that instruction. As we have seen there had been no fight between the parties, no battery or assault upon the prisoner by the deceased, no legal provocation of any kind given, and even if the language used by the deceased just before he was killed could be perverted into legal provocation, then the cruel, brutal and excessive violence used by the prisoner was out of all proportion to the provocation.

On the question of self-defence however his Honor gave the prisoner every advantage and benefit. He said "If you are satisfied with the evidence that when the deceased left the house and returned and got near the bunk of the prisoner he said 'you trifling one armed scoundrel, if killing is what you want, I am a killing man', and made a leap for his box and the prisoner had good reason to believe that he was about to suffer death or great bodily harm at the hands of the deceased, and struck and killed him for the purpose of saving himself from such aparent danger and for no other purpose, he would have the right to strike and kill the deceased." We

are not declaring that that charge was just to the State on the evidence in the case; we are only saying that the prisoner got the benefit of the plea of self defence when the evidence would hardly seem to justify the instruction. The law in respect to the exceptions in this case, except that on the question of insanity, has been so often passed upon by the adjudications of this court, that it seems almost trifling to seriously bring them up again for review. We have had to notice them because human life was concerned in our decision.

Affirmed.