THE PEOPLE *v.* LASSALLE.

APPEAL from the District Court of San Juan, Section 2.

No. 423.—Decided May 24, 1912.

CRIMINAL LAW—CONFESSION OF ACCUSED—REQUISITES OF CONFESSION.—A free and voluntary confession made by an accused person is the best kind of evidence and therefore admissible to prove the commission of the crime.

ID.—CONFESSION OF ACCUSED.—Upon examining the confession of the accused in this case it was considered to contain the necessary requisites for its validity and admission as proof.

ID.—CONFESSION OF ACCUSED—PRESENCE OF THIRD PARTIES.—The fact that an accused person confessed the crime before the *fiscal* and in the presence of a detective and a reporter does not by reason of this mere fact remove from the act the necessary spontaneousness to give it legal effect.

ID.—CONFESSION OF ACCUSED—REQUEST TO MAKE IT—OATH AND SIGNATURE OF ACCUSED.—It is not necessary to show that the accused asked permission to make the confession in order to give it validity. Nor is it a requisite that the confession be signed and sworn to by the accused. A verbal confession is valid.

ID.—CONFESSION OF ACCUSED—IMPRISONMENT OF ACCUSED.—A confession made by an accused person who is serving a term of imprisonment in the penitentiary as the result of a charge of capital crime is admissible as evidence against himself if the confession appears to have been made voluntarily and not on account of threats or promises.

ID.—INSTRUCTIONS TO JURY—CONSTRUCTION.—It is a general principle of law that the instructions to the jury should be construed as a whole and not in single and independent paragraphs, and that in their construction the evidence introduced at the trial which served as a basis for the instructions should be taken into consideration.

ID.—INSTRUCTIONS TO JURY—PREMEDITATION—DELIBERATION.—When the judge does not define particularly the terms premeditation and deliberation in his instructions to the jury, but expresses himself in general terms which include such definitions, the instructions are sufficient and conform to the law.

ID.—PREMEDITATION AND DELIBERATION.—Both of these expressions are referred to and explained in the opinion.

ID.—DELIBERATION—MURDER IN FIRST DEGREE.—Premeditation and deliberation are essential elements of the crime of murder in the first degree, but deliberation is not an essential element of the crime of murder in the second degree.

ID.—ERRONEOUS INSTRUCTIONS FAVORABLE TO ACCUSED—UNIMPORTANT ERRORS.—Such an error in the instructions to the jury as explaining the provisions of law in a sense more favorable to the accused than the evidence taken at the trial warrants is an unimportant error and will not work a reversal of the judgment appealed from.

ID.—INSTRUCTION TO JURY—PROOF OF MURDER IN FIRST DEGREE.—In failing to instruct the jury on the law governing the crime of murder in the second degree when the evidence shows only the commission of the crime of murder in the first degree the court does not commit error.

The facts are stated in the opinion.

*Mr. Jacinto Texidor* for appellant.

*Mr. Charles E. Foote, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

In this case the defendant was convicted of murder in the first degree and the death penalty was assessed. The information was in proper form and charged José Lassalle Hernández with the killing of Francisco Santiago under such circumstances as to constitute murder in the first degree. At the time of the murder, on January 15, 1911, both the defendant and the defunct were prisoners, serving out sentences in the insular penitentiary at this capital.

The facts are briefly as follows: On the morning of the fatal day Francisco Santiago about 10 o'clock made a com-

plaint to a fellow-prisoner, Miguel Guadalupe, who was a corporal in the prison, against the defendant, who was also a corporal, that the accused had been mistreating him because he forbade him to speak with the other convicts; that he treated him like a woman; that he was jealous of him, and that the complainant was tired of this treatment. Guadalupe a little later, about midday, called the attention of Lassalle to the complaint of Santiago. The defendant denied the truth of what the defunct had said. At night, when the accused went on watch, he approached the railing of the shoe shop and with a stick, which had hooks attached, he caught the chain which held a shoe knife, by which means he got possession of that implement, and about 11 o'clock went to the tailor shop where Santiago and several other convicts were sleeping. He first went to the table on which lay a prisoner called "Cagüeño," looked at him and passed on to where Santiago was lying apparently asleep. He struck the latter with the knife, who cried out, "Oh, they have killed me." He jumped up and sank down to a sitting posture, when the defendant struck him three more times. During these occurrences those nearest the defunct awoke. Persons came in and disarmed the defendant, who attempted suicide, inflicting several wounds on himself also. Santiago died in a few minutes from the wounds inflicted by defendant. The defendant was taken to the prison hospital. The prosecution followed promptly and, in November last, after a trial before a jury, the defendant was convicted and he was sentenced to suffer the penalty of death. An appeal was taken on his behalf, and the record was duly filed in this court. Not being able to employ counsel a distinguished advocate was appointed by the court to represent him here. The case was heard on briefs and oral arguments and submitted on the 7th of the present month.

Five errors are assigned as having been committed by the court on the trial to the prejudice of the accused. They are set out seriatim as follows:

"1. The appellant maintains that in this case which is now the object of this appeal the confession made by the defendant was improperly admitted and against the essential rights of said defendant.

"2. The testimony of the defendant was heard without taking into consideration the legal requirements.

"3. Counsel for defendant alleges that the court committed an error in the charge given to the jury which was prejudicial to the essential rights of the accused.

"4. The District Court of San Juan committed an error upon charging the jury, considering a matter which had been excluded from the consideration of the jury.

· "5. Counsel for defendant maintains that the court in its charge to the jury failed to consider the elements of premeditation and deliberation to the effect that they should have been considered by the jury."

These specifications of error fall naturally into two classes:

First. That the confession of the accused should not have been admitted in evidence.

Second. That the instructions given by the court to the jury were improper and prejudicial to the rights of the appellant.

The confession of the accused reads in full as follows:

"José Lassalle Hernández being duly sworn and after having been informed of his right to abstain from testifying and that his testimony may be used against him, waived said right and testified before the *fiscal,* in the emergency hospital of the penitentiary, as follows:

"That he was acquainted with Francisco Santiago in Aguadilla; and it is about two months since he entered the penitentiary, where they continued being friends; that on Friday he went up to the emergency hospital, from which place he came down yesterday, that was Sunday; that he was reprimanded by the yard corporal, Miguel Guadalupe, who told him that Francisco Santiago had said to him (Guadalupe) that the witness prohibited Santiago to speak with the other people in the barber shop; that this occurred at about 10 o'clock in the morning; that on account of this and of the friendship he had with Francisco he felt a great resentment in view of the fact that · he was considered as a suspected person—that is, that it was thought

he held immoral relations with Francisco. When the night arrived, and while making an inspection of the place, he approached the entrance of the shoe shop, and by means of a stick which he had in his hand he caught the chain from which the shoe knife was pending; that he took hold of the same and went to the place where Francisco was, finding him in bed and with his eyes closed; that he don't know that Francisco was awake as he had just gone to bed, and then he made an assault upon him with the shoe knife, and then Francisco jumped up and fell down to a sitting posture, the defendant striking him three times with his shoe knife; that immediately those nearest to the place of the incident awoke.

"After the foregoing statement had been read to the defendant he signed the same as it is in accordance with his dictation. (Signed) José Lassalle. [Witness] (Signed) Pedro G. Goico.

"Sworn and subscribed before me to-day, the 16th of January, 1911. (Signed) Luis Campillo, District *Fiscal.*"

Now the question is presented, was this confession properly received according to the dictates of the law or was its admission prejudicial to the rights of the appellant? A confession made by an accused person, if given freely and voluntarily, is evidence of the most satisfactory kind. Such a confession is deserving of the fullest credit, being presumed to flow from the deepest sense of guilt, and it is, therefore, admitted as proof of the commission of the crime confessed. While from the nature of confessions they must, before being admitted as evidence, be subjected to careful scrutiny and received with great caution. A deliberate voluntary confession is regarded by the best authorities as among the most effectual proofs to be used in legal proceedings and constitutes the strongest evidence against the person making it of the facts stated therein. *Sparf & Hansen* v. *United States,* 156 U. S., 55.

It is universally conceded that for a confession to be admissible in evidence against the confessor it must be free and voluntary. Was the confession in this case such a one? It was made to the *fiscal* under oath after the confessor had been informed that he had a right to abstain from making it.

He renounced this right. He was also cautioned that any confession which he might make could be used against him; still he made his affidavit. After it was written out by the district attorney, at the dictation of the prisoner, it was read to him, signed and sworn to before the said officer, and certified to by him. The document was also signed as a witness by Pedro G. Goico, a newspaper reporter who was present. An officer in the detective branch of the police force, Lieut. Quiñones, was also present during the making of the confession, but his name does not appear as a witness to the document.

Counsel for the appellant maintains that under such circumstances the confession was wanting in those elements of spontaneity which the law requires in order to be used against him as evidence on the trial. There is nothing to support this contention in our statutes, and the eminent counsel fails to cite us to any decision sustaining his position. If there had been any his industry and acumen would have succeeded in bringing it to light. Though the detective and the reporter were present at the confession, there is nothing to show that they took any part in the proceeding except that the latter signed the paper as a witness. This was unnecessary but entirely harmless. Had the confession been made in open court in presence of the judge, the jury, the marshal and the entire bar, with a full array of newspaper reporters taking it down word for word as it fell from the lips of the defendant, it may still have been voluntary, and if so would have been admissible in evidence.

But counsel says there is nothing in the record to show that the defendant asked to be permitted to confess, and insists that such a request is necessary to the validity of the confession. We do not so understand the law. But it might be inferred from the introductory words of the document that it was taken at his request, had such been required; but it does not appear either that any one suggested to him or persuaded him to make any statement or confession. On the

contrary, he was cautioned that if he made any statement it could be used against him when he came to trial. Still he persisted, for reasons satisfactory to his own mind, in making the statement and confirming by his oath and signature in presence of witnesses. A mere verbal statement, without the sanction of an oath, could be used in evidence against the party making it when brought to trial, so the greater formalities used in this case, though much to be commended as conducing to certainty and showing the voluntary nature of the act, were not required to give validity to the confession.

Moreover, it appears in the testimony of Quiñones that the defendant was told by the *fiscal* that he was not required to make any statement, but could do so or not as he chose, and that he confessed without either a threat or a promise being made to him. And the witness, Goico, testifies that the *fiscal* notified the prisoner that he could make a statement or not as he chose, and that Lassalle replied that he was willing and desired to make his declaration. From these witnesses it appears that the confession was certainly voluntary and taken under all due safeguards and formalities.

The ability and fairness displayed by Luis Campillo, Esq., the *fiscal,* in taking this written confession of the accused is much to be commended, and is worthy of imitation by other officers under like circumstances.

When the defendant made the confession he was detained in the infirmary of the penitentiary, he knew he was charged with the crime and he confessed before the *fiscal* of the district, an officer exercising authority over him, and in the presence of a lieutenant detective who at that moment could be considered as exercising authority over the prisoner. But this alone, without a showing that the confession was obtained by some inducement or threats, does not make it void nor inadmissible in evidence.

The confessions of any person, though he may be imprisoned and in chains, under accusation of a capital crime, are admissible in evidence against him, provided it appears that

they were made voluntarily and not obtained by means of inspiring fear or through promises. *People* v. *Kent,* 10 P. R. R., 370 and 378, citing the *Sparf & Hansen* case in 156 U. S., 58; and the *Pierce* case in 160 U. S., 357; see also *Panchito's* case in 9 P. R. R., 454, and *Yare–Yare's* case in 14 P. R. R., 227; and the case of *Aléstico* recently decided. See further 12 Cyc., 462, and cases there cited.

Then we must hold that the confession of the defendant in this case, having been made freely and voluntarily, and not under the influence either of threats or promises, and in the absence of intimidation or persuasion, was properly and legally admitted in evidence against him at the trial.

Then we arrive at the discussion of the charge given by the court to the jury. No instructions were asked by either the *fiscal* or the defendant. Did the charge of the court embody within it any propositions or observations which were improper or prejudicial to the rights of the prisoner, as is claimed by his counsel in his brief and the oral argument made before us on the hearing?

The appellant contends that the court below committed several errors prejudicial to the rights of the defendant in the instructions given to the jury. The court, in its instructions to the jury, made a resumé of the evidence beginning with the testimony of the medical experts, and in passing upon the evidence of the other witnesses states: "Then comes the testimony of the prisoners from the penitentiary, who were the only ones present when the crime took place * * *."

These words are taken by the appellant as meaning that the court meant to say to the jury that all the witnesses from the penitentiary who testified at the trial were eye-witnesses to the crime. But this expression of the judge should not be considered alone. It is a well-known principle and, we believe, it is unnecessary to cite authorities that the instructions should be considered as a whole and not by independent paragraphs, and that an instruction should be construed with reference to the evidence on which it is based. It appears

from the evidence that five prisoners from the penitentiary testified but only one of them, Ezequiel Ponce, saw the commission of the crime. The court sums up the testimony of all the witnesses, and does it with great care and exactness and without omitting any important detail testified to by them.

In the instructions to the jury about the evidence the court has not changed the facts in any respect, and from the summing up it clearly appears that Ezequiel Ponce was the only witness who saw Lassalle strike a mortal blow on Santiago, and that the other witnesses were not present at that moment. The court, in commenting upon the evidence, makes a distinction among the witnesses—that is, between the medical expert, Dr. López Antongiorgi, who was called from out of the penitentiary to assist the wounded, and the witnesses who were in the penitentiary when the crime was committed. It refers to the latter, not as eye-witnesses, but as persons who were present inside of the penitentiary when the crime was committed. Reading the instructions as a whole this is the only natural and logical interpretation that could be given to the expression of the court; they could not have led the jury to confusion and there is no error in them that could be considered prejudicial to the defendant.

But even if the court inadvertently referred to all the fellow convicts of the defendant as witnesses who were present at the killing when in fact only one of them actually saw the killing, it was an inaccuracy of language which may be considered as slight and immaterial when taken in connection with the fact that the court made clear and elaborate comments on the testimony of such witnesses separately, and thus corrected any incorrect impression which may have been made on the mind of any juror as to the presence or absence of any witness from the site of the tragedy at the time it was enacted.

Appellant complains that the court committed an error in its charge to the jury, as it stated, referring to the testimony of the witness, Miguel Guadalupe, that this witness had said

that Santiago had made complaint to him, stating that Lassalle made him certain *immoral propositions,* said expression not having been used by Guadalupe, the court making a serious accusation with reference to Lassalle by using such an expression, which necessarily had some influence upon the mind of the jury.

The court, in its charge to the jury and in regard to the witness, Guadalupe, used the following words:

"The witness, Miguel Guadalupe, appeared herein and testified before all of you that he was being shaved at the barber shop, and while there Santiago came in, stating to Miguel Guadalupe that José Lassalle had made some immoral propositions to him (Santiago); that he was very tired of that and informed him about the matter."

### The witness, Miguel Guadalupe, testified as follows:

"That in the morning of the 15th he went to the barber shop to get shaved after he had cleaned the yard and then Francisco Santiago told him that José Lassalle was maltreating him, as he prohibited him to speak with any of his companions, and treated him as if he was a woman.' * * *. On cross-examination he stated that 'Santiago had told him that José Lassalle had prohibited him to converse with his companions there, and was watching him for which he reproved José Lassalle, and told him that if he continued doing that he would report the matter to the proper persons.' That 'when he reprimanded Lassalle on account of his conduct he denied the certainty of these facts but did not get angry. That prior to this Francisco Santiago had not presented him any complaint in regard to the matter and he had not received any other report against the defendant.' Replying to questions put by the judge, he stated that 'he had no personal knowledge in reference to the conduct of the defendant and learned of the matter by reason of the complaint that was made to him. That he had an interview with Santiago at 2 o'clock in the afternoon and the incident occurred during the night of that same day.' In reply to questions of the defense, he stated that 'he did not give any credit to the accusations made to him by Santiago in reference to Lassalle.' "

If the testimony of Guadalupe means anything, then it appears from the same that Santiago had told him that Las-

salle made to him some immoral propositions and he was already tired of the treatment he was receiving from Lassalle. The judge by no means makes any charge against the defendant and nothing was said in his instructions to the jury which might have produced any belief in the mind of the jury to the effect that the judge had already formed any opinion as to the moral conditions of the defendant; the judge confining himself to make a recital of what the witness, had testified, the judge making to the jury the same recital, although using other words, of the witness's testimony before the judge.

The comment made by the trial judge on the testimony of Miguel Guadalupe was authorized by the statute and perfectly fair to the accused and could not possibly have made his case any worse before the jury. All the evidence was fairly submitted to the jury and they were instructed, viz:

"Therefore, if you consider, in view of the evidence introduced, that said witnesses have stated the truth, and that they have plainly shown all the elements contained in the information, and if you, gentlemen of the jury, properly consider the veracity of the testimony of said witnesses, then you must bring, as in duty bound, a verdict of guilty in any of the degrees you may deem proper. But if you consider that the declarations of the witnesses are not worthy of belief and that the elements set forth in the information have not been shown in any manner, then it is your duty to give the defendant the benefit of a reasonable doubt, and you must render a verdict of acquittal."

Clearly the testimony of the witnesses was fairly put before the jury, and they were required to pass on its credibility and sufficiency to warrant a conviction. Then the charge of the court was correct at least in these respects of which counsel here complains.

But the principal criticism made by counsel of the charge of the court is in regard to the proper definitions of "premeditation" and "deliberation"; and especially the failure of the court to give the jury an instruction showing the clear-

and exact signification of the word ''deliberation'' in connection with the crime of murder. It must be borne in mind that no such instruction was requested by the defendant's counsel at the trial. The distinguished counsel who represents the appellant here had no connection with the case in the trial court.

The charge of the court as to this matter is as follows:

''Inasmuch as a crime of murder in the first degree is charged in this information, it becomes necessary to consider what constitutes murder in the first degree. The same has been defined by the law in general terms, stating that it is the unlawful killing of any person, with malice aforethought. Malice prepense. By malice is understood any wrongful act intentionally executed without any just cause or excuse; however, this malice is not sufficient by itself to constitute a crime, but besides it is necessary that said malice be prepense. To premeditate is to decide upon the execution of an act prior to the commission of the crime. If an idea arises in our minds which compels us to the execution of an act, after having thought about the same, and subsequent to the premeditation and deliberation thereof, and after having decided to perform the same, that constitutes premeditation; but it is also necessary that said malice prepense must be accompanied by other circumstances to constitute the crime of murder in the first degree; these circumstances being those which are defined by the law in section 201 of the Penal Code. This section reads as follows: 'All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate, and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree.' So that this section of the law is the one which specifies the necessary elements to constitute the crime of murder in the first degree and which can be divided in three different groups: First, all murder perpetrated by means of poison, lying in wait, or torture; second, all kinds of intentional killing, deliberate and premeditated; and third, any killing committed upon the perpetration of arson, rape, robbery, burglary, or mayhem. As we see, neither the first nor the third is the crime set forth in the information presented by the *fiscal,* but it is the second, to wit, any deliberate and premeditated killing. The element of malice is also required in murder of the second degree, although none of the elements set forth

in section 201 are required. So that if a man is charged with the commission of a crime of murder with malice prepense this does not mean that the crime is murder in the first degree; it may be of the second degree.''

The instruction on this point goes further than necessary in defining the term ''premeditation,'' but inasmuch as the judge elaborated that term he might very properly have defined also more explicitly the term ''deliberation'' and have drawn the distinction between them. In the absence of a request to do so there was no material error.

The court instructed the jury that *malice aforethought* is an essential element to every murder whether it is of the first or second degree, but in order that the same constitute murder in the first degree the killing must be intentional, deliberate and premeditated. The court did not explain to the jury the meaning of the word ''deliberation,'' but instructed it with respect to what constitutes premeditated malice in words which correctly set forth and include both ideas, premeditation and deliberation. This is sufficient, and it is not necessary to separately explain both words.

In a North Carolina case Mr. Justice Hoke of that State treats this question with such elaborate clearness and ability that we may be excused for copying extensively from the opinion as found on pages 283 to 288 of 50 Southeastern Reporter, which says:

''Again, it is contended that the charge is erroneous because, while explaining to the jury the meaning of 'premeditated,' the court did not explain the term 'deliberate,' both words being used in the statute defining the crime of murder in the first degree. But to our minds the charge is not open to any such objection. The judge told the jury, among other things, on the subject: 'The word ''premeditate'' means to think beforehand—as when a man thinks about the commission of an act, and concludes and determines in his mind to commit the act. He has thus premeditated the commission of the act. The law does not lay down any rule as to the time which must elapse between the moment when a person premeditates or comes to a determination in his own mind to kill another person and the moment

when he does the killing, as a test. It is not a question of time. It is merely a question of whether the accused formed in his own mind the determination to kill the deceased, and then at some subsequent time, either immediate or remote, does carry his previously formed determination into effect by killing the deceased. If there be an intent to kill and a simultaneous killing, then there is no premeditation. If the prisoner weighed the purpose of killing long enough to form a fixed design to kill, and at a subsequent time, no matter how soon or how remote, put it into execution, there was sufficient premeditation to warrant the jury in finding murder in the first degree.' The two terms 'deliberate' and 'premeditate,' while frequently used in this connection as interchangeable, because, perhaps, the facts do not always require that they should be spoken of separately, have not exactly the same meaning. 'Premeditate' involves the idea of prior consideration, while 'deliberation' rather indicates reflection, a weighing of the consequences of the act in more or less calmness. But if the charge of the judge is in words which express both ideas, and which fully explain them to the jury, it is correct, though the judge may not define each term separately. *Lang* v. *State,* 84 Ala., 1, 4 South., 193; 5 Am. St. Rep., 324. In the charge before us the judge gives a full explanation of both the statuory words defining the crime. He excludes all idea of a killing from passion suddenly aroused, and directs the jury, before they can convict of the higher crime, that the killing must be from a fixed determination, previously formed, after weighing the matter. It comes fully up to the requirements of the law on the question, and is well supported by authority. *State* v *Hunt,* 134 N. C.. 684; 47 S. E., 49; *State* v. *Spivey,* 132 N. C., 989, 43 S. E., 475.'' *State* v. *Exum,* 50. S. E. Rp., 288.

Had the trial court in the case before us followed the lead of the North Carolina case it would have been well, but the question is for us to decide was there a reversible error in the instructions given.

As we have already seen, the instruction given by the court to the jury in regard to malice aforethought embraces the element of deliberation, which is an essential element to the crime of murder in the first degree, but not to murder in the second degree. The judge instructed the jury to the effect that malice aforethought is an essential element of the crime of murder in the second degree, and, therefore, according to

his instructions, it is necessary, in order to render a verdict of murder in the second degree, that the element of deliberation should have existed. This instruction is not a correct recital of the law, but the same does not constitute a prejudicial error and it is not sufficient cause on which to base a reversal of the judgment.

From a careful examination of the facts of this case, as shown by the statement of facts to be found in the record, or even as detailed in the confession of the accused, which we have copied in full on a former page, it will be readily seen that the crime committed was murder in the first degree, and there was nothing shown on which it could be reduced to murder in the second degree or lower. The unfortunate prisoner was fatally stabbed four times while lying asleep at midnight. For this reason it was not necessary to make any charge to the jury as to what constitutes murder in the second degree, as it was sufficient to instruct them in reference to murder in the first degree. It will be observed from the decisions cited below that courts have held in cases where the facts have some similarity, but which are not so clear as in the case at bar, that the instructions requested by the defendant in regard to murder in the second degree were properly refused by the court.

The courts on the continent have made observations on this point in various cases to the effect following:

"The defendant repeatedly had threatened to kill his father. One night defendant approached the bed where his father was sleeping, shooting and killing him with a pistol which he had procured and then went to the neighbors and stated that some one else had killed his father. *Held:* That the court did not commit any error in refusing to instruct the jury as to the crime of murder in the second degree." *Swan* v. *State,* 39 Tex. Cr. App., 533.

"When in a case of murder it appears from the evidence that the killing of deceased was produced by a shot discharged by the defendant with a firearm while deceased was sitting by his fireside, unarmed, the court did not commit any error in refusing to instruct

the jury with respect to murder in the second degree." *Macklin* v. *State,* 53 Tex. Cr. App., 201.

"Where on a trial for murder in the first degree the witnesses for the prosecution had testified that the accused had entered a saloon and there met the deceased, who was sitting at a table sleeping, and the defendant shot and killed him without speaking a word, and such evidence was not rebutted except by the testimony of the defendant himself, the court committed no error in refusing to give any charge to the jury as to murder in the second degree." *State* v. *Niehaus,* 188 Mo., 304, 87 S. W., 478.

"When the deceased was called from his commercial house, late at night, and shortly thereafter he was found dead with three mortal wounds inflicted on his head, and the proof tended to show that the same had been caused by the defendant, there was no error in refusing to instruct the jury with respect to the crime of murder in the second degree, inasmuch as the defendant was either guilty of murder in the first degree or innocent of any crime." *State* v. *Furgurson,* 162 Mo., 668, 63 Southwest. Rep., 103, and cases cited.

"The fact that the trial court gave instructions on murder in the second degree which the facts of the case did not require, being favorable to the defendant, although they may have been erroneous, does not constitute a material error and no complaint can be made of them by the accused." *Tubb* v. *State,* 55 Tex. Cr. App., 627; *Macklin* v. *State,* 53 Tex. Cr. App., 197; *Lounder* v. *State,* 46 Tex. Cr. App., 125; *State* v. *Glahn* (Mo.), 11 Southwest. Rep., 264; *State* v. *Jackson* (Mo.), 66 Southwest. Rep., 939.

In a New York case the same principle is also stated very clearly and correctly, as follows:

"As there was no question of justifiable homicide in the case, the prisoner had no right to call on the court to instruct the jury on that subject; and although the instruction given was wrong in a point of law, I do not see how it can possibly have operated to the prejudice of the prisoner." *Shorter* v. *The People,* 2 N. Y. Ct. App. (2 Comstock), 203.

No defendant can complain of an instruction which, though erroneous, is too favorable to him. Such would be that of the trial court in telling the jury that proof was required of deliberation to constitute murder in the second degree, which,

being too strong or requiring more than warranted by the law, would for that reason be favorable to the defendant, and hence harmless to him and immaterial. *State* v. *Garborough* [Kans.], 18 Pac. Rep., 474; *People* v. *Callaghan* [Utah], 6 Pac. Rep., 49; *Sparf & Hansen* v. *United States,* 156 U. S., 103 *et seq.,* citing cases from California and elsewhere.

The Supreme Court of Wyoming, speaking through Mr. Justice Conaway, in a very able and elaborate opinion, discusses an important question which we have often decided and which was in fact, on March 30, 1905, embodied in a very salutory statute in this Island. See Sess. Acts of 1905, p. 10. The learned court says:

"The rule as to reversing judgments on account of erroneous instructions to the jury by the court, and stated by Thompson on Trials as the rule of nearly all the courts, is 'that no judgment will be reversed on account of the giving of erroneous instructions, unless it appear probable that the jury were misled by them.' And again: 'Of course, it can never be said that the jury were misled by the giving of erroneous instructions where they have reached the correct result by their verdict. Accordingly it is the practice of most of the courts, before passing upon exceptions to instructions, to look into the evidence, and see if the verdict was right; and, if it is found to be so, the court will look no further.' 2 Thomp. Trials, 2401, 2402, and authorities there cited. This rule is sustained by very numerous authorities of the highest respectability. Some courts say that the doctrine of error without prejudice does not apply to the same extent in criminal as in civil cases, and some courts hold that error in the instructions will be presumed to be prejudicial. Admitting, without discussing or deciding either point, that both of these restrictions of the rule are correct in their proper application, it may safely be said that it is never the right of a party to demand a new trial in any case, civil or criminal, on account of error in the instructions to the jury where it is clear from the evidence that the verdict is right, and that a new trial ought to produce the same result, or would, under correct instructions, certainly produce the same result. * * * No useful purpose can be subserved by a new trial. No advantage could accrue to the plaintiff in error. No new evidence could affect the result. By his own confessions and testimony plaintiff in error has placed upon record evidence that must always

result in his conviction on a fair trial. Other evidence of his guilt is satisfactory. Another trial must necessarily result in his conviction under any correct instructions. He has followed his brother's advice to the extent of confessing his crime, but not to the extent of pleading guilty, and appealing to the mercy of the court. But this is a case in which neither the trial court nor this court has any discretion or any power to grant clemency or extend mercy. Upon a verdict of guilty, or on a plea of guilty of murder in the first degree, the trial court must pronounce the sentence of the law. Upon a record showing that such sentence was lawful and right, this court must affirm it, and fix the time for its execution. Enough has already been said to show that this court can take no other course. The evidence shows a cold-blooded, atrocious murder, with seldom a parallel. If there be any considerations which may be urged in favor of clemency and mercy in this case, this court cannot entertain them. That is the function and duty of the executive, in whom is lodged the pardoning and the commuting power. This court considers only the record and the law. The verdict of the jury is fully sustained by the evidence. No other verdict could have been reached by jurors who regard their legal duties and the obligations of their oaths." *Miller* v. *State,* 29 Pac., 139.

The decisions in New York are in accord with these views, and in one of them it is said:

"A verdict in a capital case will not be reversed upon the facts, unless the appellate court is of the opinion that the facts were not fairly considered or did not justify the verdict. Reference in the charge in a murder trial to the claim of self-defense as the one on which the defendant relies for an acquittal is no ground for a new trial. A misstatement by the court of the evidence, not called to its attention at the trial, is not ground for reversal, especially where the jury have been reminded that they are to correct any misapprehension of the testimony by the court, and the evidence as recited does not vary substantially from that given." *People* v. *Fitzthum,* 137 N. Y. Ct. of App. Repts., 581.

In the case before us the fact as confessed by the defendant show a wilful, deliberate and cold-blooded murder of a friend for a fancied wrong; and it would not have been possible for the jury, even with a more favorable charge, to

have found a verdict other than guilty of murder in the first degree. The proof is ample and even overwhelming and even though the record had disclosed slight errors of procedure we could not, under our statute and the former decisions of this court, do anything else than affirm the judgment of conviction. *People* v. *Calero,* decided February 11, 1912, citing *People* v. *Clemison,* 250 Ill., 135, 95 Northeast., 157.

Then, the ends of justice having been attained in this conviction, the judgment rendered by the Second Section of the District Court of San Juan on November 13, 1911, should be in all things affirmed.

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.