## Weaver v. Ficke.

(Decided March 6, 1917.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Searches and Seizures—Constitutional Law—Search Warrant—Validity.—Under section 10 of the constitution, providing that "no warrant shall issue to search any place, or seize any person or thing," etc., a warrant that neither describes the premises to be searched nor gives the name of the owner of the premises is invalid and confers no authority on the searching officers.

2. Trespass—Joint Trespassers—Liability of One Who Aids and Advises Trespass.—One who aids, abets, assists, or advises a trespasser in committing a trespass is equally liable with the one who does the act complained of.

3. Trespass—Joint Trespassers—Aiding or Advising—Evidence—Sufficiency.—In an action of trespass, evidence on the question whether one of the defendants aided or advised the trespass considered, and held sufficient to take the case to the jury.

4. Trespass—Punitive Damages—Instruction.—Where in trespass for searching plaintiff's premises the entry is made under a void search warrant and the officers act in wanton disregard of plaintiff's rights, punitive damages are recoverable.

5. Appeal and Error—Verdict—Excessiveness.—In an action of trespass, committed pursuant to a void search warrant and in wanton disregard of plaintiff's rights, a verdict of $500.00 against one who maliciously or wantonly aided or assisted in the trespass is not excessive.

6. Appeal and Error—Evidence—Admission of Improper Evidence—Admonition of the Court. Not to Consider It—Effect.—Ordinarily the admission of improper evidence is not prejudicial where the court subsequently instructs the jury not to consider it.

·MYERS & HOWARD for appellant.

O. M. ROGERS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for malicious trespass, plaintiff, George Ficke, recovered of the defendants, J. J. Weaver and J. V. Hunt, a verdict and judgment for $500.00. Only Weaver appeals.

The facts are as follows: Weaver is the president of the Ludlow Realty Company, which owns the Lagoon, near Ludlow. The Park Amusement Company, a corporation, was the lessee of the Lagoon property and was conducting an amusement resort there. Weaver was the general manager of the Park Amusement Company and resided in the club house located on the premises, and had charge of its property. J. V. Hunt was the secretary and treasurer of the Park Amusement Company and resided in Cincinnati. Julius Kress was in the employ of the same company and acted under the immediate supervision of Weaver in looking after the premises. For the purpose of consuming the garbage from the club house, the Park Amusement Company purchased a few hogs, which were placed in a pen some distance from the resort. Plaintiff, Ficke, was in the employ of the Cincinnati, New Orleans and Texas Pacific Railway Company as yard foreman and occupied a tract of land back of and near the Lagoon. He also was engaged in raising hogs. A contractor, who had a number of negro hands, was engaged in doing some track work for the railroad company. The hands were encamped in the rear of the Lagoon. The garbage from the camp was purchased by plaintiff and fed to his hogs. Kress discovered a barrel of slop which had been left at the site of the negro camp. Thereupon he hauled it to the Lagoon pig pen. There is evidence to the effect that plaintiff, finding that his slop had been removed to the Lagoon pig pen, became angry and threatened to get even with the man who had removed it. The morning after Kress had removed the slop he found that one of the hogs in the Lagoon pen had been killed and about one-half of the hog was missing. This information was communicated to Weaver by Kress. Thereupon Weaver telephoned to the defendant, Hunt, in Cincinnati. On the same day, Hunt visited the Lagoon, conferred with Weaver and Kress, and then went before the county judge, made affidavit for a John Doe search warrant and had the search warrant placed in the hands of the

sheriff, who delivered it to three deputy sheriffs for execution. Thereupon the officers reported to Weaver at the club house, and, accompanied by Kress, went to plaintiff's home. Upon their arrival there in the evening, they immediately proceeded to search plaintiff's residence, barn and outhouses.

In its instructions the trial court told the jury, in substance, that the search warrant was void and conferred no authority on the officers for the invasion of plaintiff's property. They were further told to find nominal damages for plaintiff against the defendant, Hunt, and also against the defendant, Weaver, if they believed from the evidence that Weaver aided or advised the procurement of the search warrant and the invasion of plaintiff's property under and by virtue of the warrant. A finding of punitive damages against Weaver was also authorized, in the event the jury believed from the evidence that the defendant, Weaver, acted maliciously or wantonly in aiding or advising the procurement of the warrant and the invasion of plaintiff's property.

Section 10 of the Bill of Rights of our constitution provides, among other things, that "no warrant shall issue to search any place, or seize any person or thing, without describing them as nearly as may be, nor without probable cause supported by oath or affirmation." Here the search warrant did not describe the premises to be searched or even give the name of the owner of the premises. It follows that the trial court did not err in holding that the search warrant was invalid and conferred no authority on the officers to search plaintiff's premises. Reed v. Rice, 2 J. J. M. 44.

It is the rule that one who aids, abets, assists, or advises a trespasser in committing a trespass is equally liable with the one who does the act complained of. Kentucky Stave Company v. Page, 125 S. W. 170; Wetzel v. Satterwhite (Tex. Civ. App. 1910), 125 S. W. 93; Brown v. Lewis, 1 R. 238; 38 Cyc. 1159.

One of the grounds urged for reversal is that the evidence is insufficient to show that Weaver aided or advised the trespass. A short statement of the evidence will show that this contention is without merit. Though it appears that Hunt was the secretary and treasurer of the Park Amusement Company, it also appears that Weaver was its general manager and in control of its

property. When the propriety of taking action to discover that portion of the hog that had been removed from the pen was under consideration, the matter was brought to the attention of Hunt. Hunt came to the Lagoon and, after consultation with Weaver, procured the search warrant. After the warrant had been placed in the hands of the officers they reported to Weaver. Weaver suggested that they get Mr. Callahan, the chief of police. Two of the officers say that Weaver told them that it was plaintiff's premises that he wanted searched and that Kress, an employe of the company, accompanied them to plaintiff's premises at Weaver's request. As the warrant did not describe the premises, and as Weaver told the officers that it was plaintiff's premises that he wanted searched and sent Kress, an employe of the amusement company, along with the officers to plaintiff's residence, it was for the jury to say whether Weaver aided and advised the procurement of the warrant and the subsequent trespass on plaintiff's property.

But it is insisted that the evidence did not authorize a punitive damage instruction as to Weaver. We have frequently written that punitive damages may be recovered where the entry is made maliciously, or in wanton disregard of the plaintiff's rights. Wilcox v. Alley, 140 Ky. 187, 130 S. W. 1115; Perciful v. Coleman, 24 R. 1685, 72 S. W. 29; Ohio Valley Tel. Co. v. Meyer 22 R. 36, 56 S. W. 673. It must be remembered that in a case like this malice does not mean mere ill will against a person, but means a wrongful act intentionally done without just cause or excuse. Here the trespass was not accidental, but intentional. It was likewise wrongful and unjustifiable. That it was committed in a high-handed and oppressive manner and in a wanton disregard of plaintiff's rights, the evidence leaves no doubt. Having aided and advised the procurement of the warrant and the resulting trespass, and thus set the officers in motion, Weaver is responsible for the high-handed acts of the officers which accompanied the trespass. Under these circumstances, the punitive damage instruction was clearly authorized. For the same reason, and for the further reason pointed out in the early case of Reed v. Rice, *supra,* that there is no form of process known to the law which excites such intense feeling as a search warrant, because of its humiliating and de-

grading effects, we conclude that a verdict for $500.00 is not excessive.

During the progress of the case the trial court permitted a deputy sheriff to testify that the county judge, when he handed him the search warrant, told him to go and see Weaver, and among the errors assigned for a reversal is the admission of this testimony. This point is not well taken, for the court subsequently instructed the jury not to consider the statement as evidence. In view of the admonition of the court, we are of the opinion that the admission of the statement was not prejudicial under the facts of this case.

Other errors are assigned, but we do not deem them of sufficient importance to merit a discussion.

Judgment affirmed.