REEVES M. RAMSEY v. STATE.

154 So. 855.
En Banc.
Opinion Filed May 14, 1934.

*Clyde R. Brown* and *Clyde E. Mayhall,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

ELLIS, J.—Ramsey was charged with the offense of murder in the second degree, one element of which offense is the evincing of a depraved mind in the act of killing the deceased. Depravity of mind is an inherent deficiency of moral sense and rectitude. See Knepper v. Knepper, 139 Mo. App. 493, 122 S. W. Rep. 1117.

It is the equivalent of the statutory phrase "depravity of heart" which has been defined to be the highest grade of malice. See Lang v. State, 84 Ala. 1, 4 South. Rep. 193, 5 Am. St. Rep. 324.

The legal and technical sense of the word "malice" differs from its sense in ordinary or common speech. In the technical sense it is a term of art importing wickedness and excluding a just cause or excuse. See State v. Debolt, 104 Iowa, 105, 73 N. W. Rep. 499; Weaver v. Ficke, 174 Ky. 432, 192 S. W. Rep. 515; State v. Weeden, 133 Mo. 70, 34 South. Rep. 473; State v. Darling, 199 Mo. 168, 97 S. W. Rep. 592; State v. Spivey, 132 N. C. 989, 43 S. E. Rep. 475; Davis v. State, 51 Nebr. 301, 70 N. W. Rep. 984.

That definition may be inaccurate because no just cause or excuse can be allowed for a wrongful act. Malice in law refers to that state of mind which is reckless of law and of the legal rights of the citizen in a person's conduct

toward that citizen. See Colwell v. Tinker, 169 N. Y. 531, 62 N. E. Rep. 668, 58 L. R. A. 765.

It includes all acts wantonly or willfully done, that is, which any man of reason, knowledge and ability must know to be contrary to his duty. It is implied from wrongful and unjustifiable acts done on purpose or without just or legal excuse. See 38 C. J. 352.

It is obvious therefore that the phrase "evincing a depraved mind regardless of human life" as used in the statute denouncing murder in the second degree was not used in the legal or technical sense of the word "malice" as above defined. The phrase conveys the idea of "malice" in the popular or commonly understood sense of ill will, hatred, spite, an evil intent. It is the malice of the evil motive which the statute makes an ingredient of the crime of murder in the second degree. See Davis v. Hearst, 160 Cal. 143, 116 Pac. 530.

However severe the criticism may be of the conduct of the accused in killing young Ellis it cannot be justly said that it proceeded from an evil motive, from ill will, hatred or spite. It may have sprung from a flame of hottest indignation, outraged decency, humiliating insult, produced by a drunken vulgarian's obscene conduct toward the daughter of his host, but emotions of that kind cannot properly be said to be the product of an evil mind, a vicious, corrupt, base, perverse, malicious motive which may be said to characterize a "depraved mind regardless of human life."

The evidence in the case does not tend to establish in the slightest degree the depraved quality of mind in the accused when firing the shot which killed the youth named Ellis necessary to the commission of murder in the second degree.

The case of Holton v. State, 87 Fla. 65, 99 South. Rep. 244, was decided upon the proposition that the evidence for

the State, consisting of certain circumstances pointed out in the opinion, were not conclusive of the falsity of the defendant's account of the killing of John Slaughter. It was pointed out in the opinion that if the circumstances had been sufficient to overcome the defendant's story and refute it in detail it would have left him with nothing to stand on but a practical confession of murder in the first degree which the jury evidently could not accept.

In the case at bar the evidence is practically undisputed as to the circumstances of the shooting and in my opinion it fails wholly to establish in the accused that depravity of mind essential to conviction of murder in the second degree.

So the judgment should be reversed.

DAVIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.

BUFORD, J., dissents.

DAVIS, C. J. (concurring with ELLIS, J.).—My view is that manslaughter at most is all that the evidence in this case tends to prove the plaintiff in error guilty of, if that. I base this assertion upon what was said by this Court in Holton v. State, 87 Fla. 65, 99 Sou. Rep. 244, which was a case wherein the defendant took the stand as a witness and gave an account of the killing in which he admitted giving the fatal wound to the deceased, but stated it to have been under circumstances which, if true, would have justified the act, or upon the most unfavorable view, *made a case of manslaughter only*. In that case this Court refused to sustain a verdict and conviction of murder in the second degree.

Here we have an exact reproduction of the situation that prevailed in the Holton case, *supra*. There is no fact or circumstance in evidence nor testimony of witness to contradict the defendant's account of the transaction. The

killing occurred inside the home of the defendant, an old man, the father of several daughters who lived with him. One of the daughters, Miss Virginia Ramsey, was receiving the attentions of Elbie Ellis, the deceased, a young man about 18 years old, whose previously demonstrated habit of openly getting drunk and indulging in most disgracefully profane and boisterous conduct was not such as to commend him as a suitor or even a companion for Miss Virginia.

The killing occurred on Sunday morning at a time when meditation and prayer should have prevailed instead of the offensive conduct on deceased's part that ensued. There is not one word of testimony nor proven circumstance to refute the testimony of defendant Ramsey, and his daughter, Virginia, to the effect that Elbie Ellis (the boy who was shot) and a Mr. Fowler who went to Ramsey's home Sunday morning about 11:00 o'clock; that as they came walking up the father told his daughter to go in the house and get some chairs; that as the daughter, Virginia, walked into the house Elbie Ellis went in with her, following her into the kitchen cursing; that the daughter in order to avoid him, then went to another part of the house where she sat down on a trunk, whereupon the boy walked in and went to cursing again, saying, "Mr. Ellis is here and he will do as he God damn pleases"; that the boy then said to the girl that he wanted to tell her something, but saying, "I ain't going to tell you here"; that after this the girl, in order to avoid the boy (who was evidently drunk as was his habit) walked into her own bed room, whereupon the boy followed her into it and said to her: "You ain't never give me none, but, by God, you are going to give me some this evening"; that about this time one Tillman Ellis and another boy came up, whereupon Elbie Ellis took a drink of rum, saying as

he did so, "Old boy, I am going to raise hell here this evening."

The evidence shows without contradiction, that when the boy said to the daughter in her own home, "You ain't never give me none, but you are going to give me some this evening," the old man, Ramsey, the father of the girl, heard him say it and thereupon ordered him out of his house. When the boy retorted in reply to the father's demand that he leave the premises, "I won't get out until I get ready," the father shot him one time with a shot gun which he testifies (without any substantial contradiction other than the fact that no weapon was afterward found on the dead boy's body) was used by him when he noticed the boy about to draw a pistol on him.

Whether this unfortunate young man who was killed under the circumstances above related, was armed or not, when he was shot, the evidence does not support the jury's finding that the father was guilty of murder in the second degree when he fired the fatal shot. The fact that modern society is bringing forth a new order of young men who have neither love nor respect for the sacred institution of "home" does not in my view of the law, deprive a gentleman of the old school from his right to defend that home against the intrusion of a liquor-imbibing young male, be  he of good family or not, who so far forgets his respect for others as to go in a drunken condition to a father's house and there within the father's hearing make an indecent proposal to a young girl. A killing by the father under such circumstances is in its most unfavorable view, at most manslaughter, because such acts and conduct of the deceased shortly prior to the killing are legally sufficient to arouse the uncontrollable resentment of a father wishing to protect not only the actual chastity, but the reputation and clean mind of his young daughters.

The jury in this case was no doubt misled into a conviction for murder in the second degree by the fact that the indictment was for that degree and unusual emphasis was laid on the testimony offered by the State to show that the deceased boy was unarmed when he was killed, although the defendant himself testified he was armed. If he was in fact armed, or made a gesture tending to show he was armed and about to shoot Mr. Ramsey, the homicide would be justifiable in self-defense. But if the deceased was wholly unarmed, which is the most unfavorable view that can be taken of the evidence against the accused, he was at most guilty of a reasonably provoked but unnecessary killing which, as a matter of law, is no greater crime than that of manslaughter.

The verdict should be set aside and a new trial awarded on authority of Armstrong v. State, 30 Fla. 170, 11 Sou. Rep. 618, 17 L. R. A. 484, and especially Holton v. State, 87 Fla. 65, 99 Sou. Rep. 244. With the foregoing expression of my views, I most respectfully dissent from the condemnation of plaintiff in error to what is for him (at his age of 66 years) a life sentence in prison for an act committed in response to a paternal instinct now fast disappearing from the social order, but which has been reared and has stood as the just foundation for our national greatness.

WHITFIELD and BROWN, J. J., concur.