245 So.2d 688 (1971)
Robert STINSON, Appellant,
v.
STATE of Florida, Appellee.
No. M-406.
District Court of Appeal of Florida, First District.
March 9, 1971.
Rehearing Denied April 8, 1971.
*689 H. Clay Mitchell, Jr., Pensacola, for appellant.
Robert L. Shevin, Atty. Gen., and John A. Zebedee, Asst. Atty. Gen., for appellee.
SPECTOR, Judge.
Appellant was adjudged guilty of the offense of third degree murder after a jury trial on charges of second degree murder. For reversal appellant challenges the correctness of the court's instruction to the jury on justifiable and excusable homicide.
Following are the facts underlying the charges as stated in appellant's brief and admitted by appellee's brief.
Appellant, his wife and another woman were at home at the time of the homicide which occurred around midnight. Appellant called to the deceased who was across the street and inquired about the payment of a debt owed by him to appellant. The appellant was 87 years old and weighed 91 pounds. The deceased was 27 years old, 6 feet, 1 inch tall and weighed nearly 200 pounds.
Ruby Watson, a state witness, was at appellant's house visiting his wife. She testified that at the time the shot was fired, the appellant was on his own property just a few feet from the edge of his house. Mrs. Watson also testified that as the deceased came across the street toward appellant, the deceased said, "I am going to give you one of the worst ass whippings you have ever had." At this time it was dark and the deceased had his hand in his pocket. He took his hand out of his pocket and swung at the appellant. When he swung at appellant, the latter jumped back and fired one shot which entered deceased's left eye. After the shooting, the deceased was taken to the hospital by appellant and Sam Rich, a witness. The deceased's wife testified that appellant said, "Let him die right there" when he was being put in the car for the hospital trip, but Rich, who was a state's witness, stated no such remark was made. The appellant, who took the stand, also denied making such a statement.
According to the transcript of testimony there were several witnesses who were in the vicinity of the affray who were called by the state but only one, Ruby Watson, actually witnessed the shooting. Mrs. Watson testified that the deceased and appellant were standing close enough, apparently divided only by the yard fence, so that deceased would have hit appellant if the latter had not jumped backwards. The fatal shot came right after appellant jumped.
During its instructions to the jury, the trial court defined justifiable homicide as follows:
"Justifiable and excusable homicide are defined by statute, I see no reason to read all of the definitions, justifiable homicide includes homicide committed in the lawful defense of one's person or necessarily committed in attempting by lawful means and ways to apprehend a person for a felony committed or in lawful keeping and preserving the peace, so that justifiable homicide includes selfdefense."
*690 Appellant contends that the above instruction on justifiable and excusable homicide is fatal for the reason that the same was not given in the language of the statute as held preferable by this court in Bagley v. State, 119 So.2d 400. Appellee's response to this contention is that the rule emanating from Bagley, supra, was not violated below inasmuch as there was no evidence in this case of any danger posed to appellant's wife necessitating a defense as was the case in Bagley. It is true that here there was no relative of the defendant in the vicinity of the affray as argued by the appellee. But the state's position in this regard in no way answers appellant's complaint that each and every element of the statutory defense of justifiable homicide should be charged upon if it is supportable by any reasonable view of the evidence. The defense of one's relatives or one's self is not the only circumstance for invoking Section 782.02, Florida Statutes, F.S.A. On the contrary, the statute expressly provides that the defense is applicable in either of several cited circumstances. Appellant has italicized the portions of Section 782.02 which were omitted from the court's charge and contends that the omission here, as in Bagley, was fatal; viz:
"Homicide is justifiable when committed by any person in either of the following cases: (1) when resisting any attempt to murder such person, or to commit any felony upon him, or upon or in any dwelling house in which such person shall be; or (2) when committed in the lawful defense of such person of his or her husband, wife, parent, grandparent, mother-in-law, son-in-law, daughter-in-law, father-in-law, child, grandchild, sister, brother, uncle, aunt, niece, nephew, guardian, ward, master, mistress or servant, when there shall be a reasonable ground to apprehend a design or commit a felony or to do some great personal injury, and there shall be imminent danger of such design being accomplished; or (3) when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."
We hold on authority of Bagley, supra, that the defendant is entitled to have the jury instructed on the law applicable to his theory of defense where there is evidence introduced in support thereof. In the case at bar, one theory of the defense of justifiable homicide that the appellant was deprived of was that the jury under the evidence here might have found that appellant slew his assailant "when resisting any attempt to murder such person [appellant], or to commit any felony upon him [appellant]", circumstances delineated in subsection (2) (a) of Section 782.02 which were omitted from the charge. We recognize the similarity of these circumstances to the "self-defense" circumstance found in subsection (2) (b) of the subject statute. Yet, while they are similar, they are not the same as attested to by the inclusion of the respective provisions separately in the statute. As stated in Bagley, at page 403:
"[3] We recognize the fact that during the trial, there was no request by the appellant or her counsel for a specific charge on justifiable homicide, nor was there any objection made to the charge, as given. However, we hold that it is fundamental that when the trial Judge purports to give a charge on justifiable homicide, then every essential element of justifiable homicide, justified by any of the evidence, should be given."
There is perhaps a more cogent reason for reversal reflected in the record before us than that based on the error inherent in the omission of each of the elements of justifiable homicide as discussed above. Although not raised by appellant, we feel that Florida Appellate Rule 6.16, subd. a, 32 F.S.A., stating in part that "The court may also in its discretion, if it deems the interests of justice to require, review any other things said or done in the cause which *691 appear in the appeal record, including instructions to the jury", requires us to hold that appellant's motion for a directed verdict made at the close of the state's evidence should have been granted.
Appellant was charged with committing the offense of second degree murder. Although appellant was convicted of the lesser crime of murder in the third degree, the test for determining whether the case was properly submitted to the jury rested on whether the evidence adduced by the prosecution was legally sufficient to prove each and every element of the second degree murder charge. If any one of said elements was lacking in proof, appellant's motion for directed verdict should have been granted.
In Harris v. State, 104 So.2d 739 (Fla. App. 1958), the court, speaking through the late Judge John U. Bird, commenting on the rights of a person assaulted on his own premises stated the following:
"[5] A person may act upon appearances as they appear to him at the time, even to the extent of taking human life if he honestly and actually believes  and the attending circumstances and conditions are such that a reasonably cautious and prudent person would believe  that he or some member of his family is in imminent danger of death or great bodily harm at the hands of the deceased. The danger need not be real or actual, but the appearance of danger must be both real and imminent and the slayer must honestly believe it is necessary to act in order to save his own life or that of a member of his family from death or great personal injury in order to constitute justification. He must actually and reasonably believe the danger to be actual and the necessity real. * * *
"[6-8] The Jury are the sole judges of the credibility of the witnesses and the weight of the evidence, but not solely of its sufficiency. Bailey v. State, 76 Fla. 213, 79 So. 730. If the verdict is supported by the evidence it will not be disturbed on appeal. The legal effect of competent evidence which is not impeached, discredited or controverted is a question of law."
Just as was the case in Harris, the undisputed facts here show that the deceased, a young, strapping man, came at appellant, an elderly man of slight build, and offered to administer "the worst ass whipping you ever had" to the latter when he was standing just in front of his own house. Appellant had neither duty to nor avenue of escape. When the deceased swung at him, appellant was under no compulsion to wait around and see whether the second blow might find its mark as promised by the aggressor.
In the circumstances reflected in this record, there was no evidence from which the jury could infer that the appellant acted in a manner evincing a depraved mind as defined by our Supreme Court in Ramsey v. State, 114 Fla. 766, 154 So. 855, when he instinctively neutralized his attacker with the only appropriate means at hand. That the attacker sustained a mortal wound is a matter that should have been considered by the deceased before he committed himself to the task he undertook.
Section 782.04, Florida Statutes, F.S.A., defines second degree murder in the following manner:
"The unlawful killing of a human being, * * *
"When perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, it shall be murder in the second degree, and shall be punished by imprisonment in the state prison for life, or for any number of years not less than twenty years."
Since the State failed to adduce any evidence from which the jury could legally find that appellant's conduct evinced a depraved *692 mind when he acted as he did, the motion for directed verdict at the end of the State's case should have been granted.
Accordingly, the judgment and sentence is reversed and the defendant discharged.
JOHNSON, C.J., and CARROLL, DONALD K., J., concur.