255 So.2d 291 (1971)
John RANERI, Appellant,
v.
STATE of Florida, Appellee.
No. O-380.
District Court of Appeal of Florida, First District.
December 9, 1971.
*292 Dan R. Warren, of Judge & Warren, Daytona Beach, for appellant.
Robert L. Shevin, Atty. Gen., and William W. Herring, Asst. Atty. Gen., for appellee.
JOHNSON, Judge.
Appellant was adjudged guilty and sentenced to ten years imprisonment for the offense of third degree murder after a jury trial on charges of second degree murder. As grounds for reversal, appellant contends that his motion for a directed verdict of acquittal made at the close of the State's case should have been granted because the State failed to produce sufficient evidence to submit to the jury to *293 prove each and every element of the offense of second degree murder. We agree.
The transcript of testimony adduced at appellant's trial reveals the following events leading to the fatal stabbing of the deceased. On the afternoon of July 26, 1969, the deceased entered appellant's apartment, occupied by appellant and Gail Sasser, and wanted to buy barbiturates from Gail. Each time she said she didn't have any, the deceased hit her. The appellant was not present on this occasion, but Gail related said events to him later in the day.
That same evening appellant, Gail and two other persons were in appellant's apartment when the deceased and another person entered. There was evidence that the deceased was intoxicated when he entered appellant's apartment. All of a sudden, the deceased went quickly over to the appellant, who was sitting on the bed, and with his fist hit appellant in the eye. Appellant seemed quite surprised and each time he attempted to ask the deceased why he had hit him, he was struck again. Appellant never struck back, but sat on the edge of the bed, his head down and blood dripping from his eye. The deceased then calmed down for a minute and leaned back against a table by the door. At this time, one of the girls present got a washcloth from the bathroom to wipe the blood from appellant's eye. The deceased grabbed the washcloth from the girl's hand and slung it to the floor, whereupon Gail picked it up and the deceased hit her leg as she backed away. Appellant then stood up, walked over to a dresser and picked up a butcher knife lying thereon. He stood about five feet from the deceased and said "Let's see how good you are with your hands." The two men then came together and the knife entered the deceased's abdomen, resulting in his death. Gail then called an ambulance. A police officer who arrived at the scene after the stabbing testified that appellant had told him that "he did not mean to cut Memory as bad as he did. He just meant to cut him a little bit."
The State contends that the evidence was ample to meet the tests of second and third degree murder since a lull in the fighting took place after the initial onslaught of blows administered by the deceased and before the appellant gained possession of the knife. It is argued that a reasonably cautious and prudent person would not have believed that he or another was in imminent danger of death or great bodily harm.
The appellant brings out the facts that he was in his own apartment, that he did not resist the vicious attack which had continued upon him for about five minutes and that he did not arm himself with the knife until the deceased broadened his attack to include Gail. Under such circumstances, argues appellant, there was no evidence demonstrating that the act of stabbing evinced a depraved mind, an essential element of the offense of second degree murder. As noted above, we agree.
As stated in Stinson v. State, 245 So.2d 688, 691 (Fla.App. 1st, 1971):
"Appellant was charged with commiting the offense of second degree murder. Although appellant was convicted of the lesser crime of murder in the third degree, the test for determining whether the case was properly submitted to the jury rested on whether the evidence adduced by the prosecution was legally sufficient to prove each and every element of the second degree murder charge. If any one of said elements was lacking in proof, appellant's motion for directed verdict should have been granted."
Section 782.04, F.S.A., defines second degree murder in the following manner:
"The unlawful killing of a human being * * *
"When perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, * * *."
*294 The phrase "evincing a depraved mind regardless of human life" conveys the idea of malice in the popular or commonly understood sense of ill will, hatred, spite or evil intent. Ramsey v. State, 114 Fla. 766, 154 So. 855 (Fla. 1934); Luke v. State, 204 So.2d 359 (Fla.App. 4th, 1967); Weaver v. State, 220 So.2d 53 (Fla.App. 2nd, 1969).
It should also be brought out that a person assaulted in his own place of abode may act upon appearances as they appear to him at the time. While the danger need not be real or actual, the appearance of danger must be both real and imminent and the slayer must actually and reasonably believe that it is necessary to act in order to save his own life or that of a member of his family from death or great bodily harm in order to constitute justification. Harris v. State, 104 So.2d 739 (Fla.App. 2nd, 1958).
With these principles of law in mind, it becomes clear that a verdict should have been directed for the appellant. The deceased entered appellant's apartment forcefully and began to seriously assault appellant and then broadened his attack to include a member of his household. Appellant had neither an avenue of escape nor the duty to do so. He was under no compulsion to wait around and see whether the deceased would again administer blows to the appellant or his friends.
Under the circumstances of this case, just as in Stinson v. State, supra, there was no evidence from which the jury could legally find that appellant's conduct evinced a depraved mind when he acted as he did. The motion for a directed verdict at the close of the State's case should have been granted.
Accordingly, the judgment and sentence entered below is reversed and the appellant discharged.
SPECTOR, C.J., and RAWLS, J., concur.