ERVIN, Judge,
dissenting.
I respectfully dissent. Under the Commission’s rules, the offense severity rating, based upon the inmate’s present offense for the conviction of second degree murder, places him in the category of “greatest most serious — 2.” Applying this characteristic to Bundy’s salient factor score of “one,” caused by one prior conviction, creates a matrix time range from 83 through 107 months. Although the Commission unquestionably possesses the discretion to set the time at the maximum range, the difficulty I have with the agency’s action is its superimposing upon 107 months, an additional 119 months for the following described aggravation: “[T]he offense involved exceptionally brutal or heinous behavior indicative of wanton cruelty, in that ..., the victim was shot twice, strangled with a rope, stabbed repeatedly and beaten about the head with a blunt instrument.” In my judgment there is a lack of either legislative or administrative authority to so aggravate under the circumstances presented.
Section 947.165(1), Florida Statutes (1979), provides in part that “[fjactors used in arriving at the salient factor score and the severity of offense behavior category shall not be applied as aggravating circumstances.” Florida Administrative Code Rules 23-21.10(2)(a) and (c) respectively preclude the Commission from using as an aggravating factor elements of the crime, or information included in the severity of offense behavior. In considering these prohibitions, I can only conclude that the aggravating factor used was simply duplica-tive of the present offense characteristic, which the Commission had previously applied to establish petitioner’s matrix time frame.
Section 782.04(2), Florida Statutes, defines second degree murder as “any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, .... ” The words “exceptionally brutal or heinous behavior indicative of wanton cruelty” are — except for their se *1183 mantic effect — substantially no different than the statutory definition of second degree murder. This court has interpreted the depraved mind element of the statute as follows:
“Depraved mind” within the second degree murder statute has been variously defined as importing malice in the sense of ill will, hatred, or evil intent, and as an inherent deficiency of moral sense and rectitude. Ramsey v. State, 114 Fla. 766, 154 So. 855. It has also been stated that malice is not limited in its meaning to hatred, ill will and malevolence, but “denotes a wicked and corrupt disregard of the lives and safety of others * * * a failure to appreciate social duty.” 40 Am.Jur.2d, Homicide, Section 50.
Hines v. State, 227 So.2d 334, 335-36 (Fla. 1st DCA 1969).
In Hines we stated that the purposeful pointing of a gun at the head of another from a very short distance implies malice of the type required by the statute, even though a willful design is absent. Id. at 336. A case more applicable to the facts before us is Weaver v. State, 220 So.2d 53, 60 (Fla. 2d DCA 1969), cert. denied, 225 So.2d 913 (Fla.1969), in which the court commented that the depravity of mind required in second degree murder has been equated with malice in the commonly understood sense of ill will, hatred, spite or evil intent. The court considered that but for the absence of premeditation, appellant’s behavior would have been sufficient to justify a conviction of first degree murder, since the facts revealed that before the homicide, the officer had been disarmed, yet appellant pursued his efforts to attack, even after the officer had signaled a willingness to break off the affray; the officer was then shot twice in the back; the defendant not only firing all bullets, but continuing to pull the trigger several times on empty cylinders, and finally, the defendant’s own res gestae acknowledgement to another officer at the scene that he intended to kill the victim.
I would agree that the wanton, heinous behavior of the inmate, as described by the Commission in its aggravation, would support also a conviction of the greater offense of first degree murder — provided premeditation were present, but premeditation was not and could not be alleged as an aggravating factor. Thus, the circumstances of the aggravation must be considered duplica-tive of the present offense conviction of second degree murder. Accordingly, I would reverse the aggravation.
In stating the above, I certainly agree that the crime the inmate committed was exceptionally abhorrent. Yet, society’s outrage could have been vindicated by other means. The lower court, in imposing its sentence of 100 years, had the authority to retain jurisdiction over the first third of the maximum sentence imposed, Section 947.-16(3), Florida Statutes, yet chose not to do so. The Commission is endowed with the power to increase the matrix time range for the specific offense characteristic by amending its own rules, but it had not done so at the time it established the parole release date. Perhaps the major obstacle to the Commission’s exercise of discretion is the Objective Parole Guidelines Act itself, which was designed to replace a system which had determined parole release dates by purely subjective considerations. Section 947.002(1), Florida Statutes. The adoption of the Act was clearly influenced by ameliorative incentives, but unfortunately the law’s application to specific instances does not always comport with the public’s perception of justice. At any event, this is an argument which should be addressed to the legislature’s wisdom. So long as the Act remains in its present state, I consider that we have no recourse other than to interpret it consistently with the legislative purpose.