799 So.2d 1084 (2001)
Richard Lee ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-1685.
District Court of Appeal of Florida, Fifth District.
October 26, 2001.
*1085 James B. Gibson, Public Defender, and A.S. Rogers, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Belle B. Schumann, *1086 Assistant Attorney General, Daytona Beach, for Appellee.
COBB, J.
Richard Adams appeals from his convictions for aggravated child abuse and first degree murder in the beating death of six year old Kayla McKean.[1] He asserts that the trial court erred in instructing the jury, over objection, on the element of malice in connection with the charge of aggravated child abuse, thus requiring reversal of that conviction and precluding its use to support the first degree murder conviction under a felony murder theory. Adams further asserts that the state failed to present sufficient evidence to support the first degree murder conviction under a premeditation theory.
The indictment charging first degree murder alleged two alternate theories, premeditation and felony murder. The trial evidence revealed that Kayla McKean died on November 25, 1998 as a result of blood loss secondary to blunt trauma injury. The pathologist explained that her injuries were caused by "massive blunt force, the type you see in a high speed automobile accident, just incredible force." Kayla was four feet, two inches tall and weighed 48 pounds at the time of her death. She was spanked with a wooden paddle made from a piece of two by six inch board. This paddle left distinct bruises on her buttocks and left hip. The blows were too numerous to count individually. In addition to severe bruising, the paddle caused massive internal blunt trauma such that the muscles in her legs and buttocks bled internally, which was in itself a fatal injury. Internal bleeding caused her heart to go into cardiac arrest. There was bleeding from the skin under her buttocks and lower back through the muscle, all the way to and beneath the peritoneal lining, the lining of the abdomen. In an apparent effort to shield herself from this paddling, Kayla's forearms were covered with bruises which extended from her elbows to fingers on both arms.
Kayla's right leg was swollen twice the size of her left leg and her hip appeared to be out of its socket. This injury was not caused by the paddle, but rather from an injury inflicted with "high force." Her head had been slammed with extreme force against a hard, flat surface like a wall or the floor. This caused a skull fracture on the right side, as well as a skull fracture on the opposite, left side as her skull recoiled in whiplash motion. This injury could not have been caused by the paddle. This resulted in the entire right side of her head swelling up so that it was flush with the bridge of her nose. Bruising on the back of her neck indicated that she had been gripped there by "really hard squeezing." Her liver was severed in three places by a "tremendous blow to the front of the abdomen." This injury was inflicted from the front, because her spine severed part of her liver.
Four of Kayla's ribs were broken, which punctured her lungs. Both kidneys were bruised and bleeding. This was caused by a severe compression injury that "squashed" her body from back to front, consistent with a foot stomping her back while she lay face down on the floor. There was blood in the sac surrounding the heart, indicating trauma to the heart. The pathologist could not testify as to the sequence of the injuries and testified the injuries seemed very random. The injuries could have been inflicted "as quickly as someone could move." However, Kayla survived long enough to lose enough blood *1087 in her abdomen so as to go into shock and suffer cardiac arrest.
After Adams' brutal attack, he wrapped Kayla's body in a sheet and informed her stepmother that the child had stopped breathing. Adams then put Kayla's wrapped body in a bag and after threatening the stepmother had her drive to a remote area where he buried the body. The police were then informed by Adams that Kayla was missing and an intense search was undertaken. Five days later Kayla's stepmother informed the police of the child's death and led them to the burial site. Because Kayla had been buried for five days prior to the discovery of her body, it was not possible to determine with medical certainty which of the injuries was inflicted first. The injuries to the liver and/or internal bleeding would have been fatal by themselves and possibly the brain injury would also have been fatal.
Kayla's stepmother testified that when she returned from work on the day of Kayla's death, Adams told her the child defecated in her pants and he made her take a bath after which time she stopped breathing. When the stepmother asked Adams why he did not call 911, Adams replied, "Do you know what they do to people like me in jail?" He said that "Kayla wasn't worth it and he never wanted her anyway." The telephones in the house had been unplugged.
Adams asserts that the trial court committed reversible error by improperly defining the element of malice to the jury in respect to the charge of aggravated child abuse.
Section 827.03, Florida Statutes (1998) provides in relevant part:
(2) "Aggravated child abuse" occurs when a person:
(a) Commits aggravated battery on a child;
(b) Willfully tortures, maliciously punishes, or willfully and unlawfully cages a child; or
(c) Knowingly or willfully abuses a child and in so doing causes great bodily harm, permanent disability, or permanent disfigurement to the child.
A person who commits aggravated child abuse commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
While the indictment against Adams specifically references subsection (2)(b), the language of the indictment in charging willful abuse of the child victim causing great bodily harm, permanent disability or permanent disfigurement also implicates the charge of aggravated child abuse under subsection (2)(c).[2] The failure to expressly reference subsection (2)(c) is not fatal. See Youngker v. State, 215 So.2d 318 (Fla. 4th DCA 1968)(erroneous statutory citation does not render conviction invalid where charging document clearly charged offense and there was no showing that the error prejudiced the defendant). Thus the indictment charged aggravated child abuse by either "maliciously punishes" or by willful abuse causing great bodily harm, etc. Defense counsel conceded below *1088 that Count 2 alleged both forms of aggravated child abuse.
The trial court gave the following instructions on aggravated child abuse:
Before you can find the defendant guilty of aggravated child abuse as charged in count one, the state must prove the following two elements beyond a reasonable doubt: Number one, Richard L. Adams maliciously and intentionally punished Kayla Victoria McKean; or Richard L. Adams willfully and intentionally abused Kayla Victoria McKean, and thereby intentionally caused her great bodily harm, permanent disability, or permanent disfigurement. Number two, Kayla Victoria McKean was under the age of 18 years.
"Maliciously" means wrongfully, intentionally, without legal justification or excuse.
"Willfully" means knowingly, intentionally, and purposely.
The defense objected, inter alia, to the giving of the standard jury instruction defining "maliciously" and urged that "maliciously" should have been defined as "ill will, hatred, spite and evil intent" in accordance with State v. Gaylord, 356 So.2d 313 (Fla.1978). Chapter 827, Florida Statutes does not define "maliciously" and the trial court, noting that the standard jury instruction was the instruction approved by the supreme court,[3] overruled the objection.
It is well settled that the standard jury instructions are presumed correct and are preferred over special instructions. Stephens v. State, 787 So.2d 747 (Fla.2001); Freeman v. State, 761 So.2d 1055 (Fla.2000). The First District, however, has held that the standard jury instruction does not adequately define "maliciously" because "it did not state that to find the defendant guilty, it must be determined that the accused `actually harbored' ill will, hatred, spite or an evil intent." Reed v. State, 783 So.2d 1192 (Fla. 1st DCA 2001); Young v. State, 753 So.2d 725 (Fla. 1st DCA 2000). In Young the defendant, charged with maliciously punishing her son, objected to the standard instruction and the appellate court reversed her conviction for aggravated child abuse, finding the standard jury instruction on malice to be inadequate. The court explained:
In State v. Gaylord, the court held that section 827.03(3), Florida Statutes (1975), which treated "maliciously punish[ing] a child" as aggravated child abuse, was not unconstitutionally vague. In order to do so, the court was obliged to determine whether the word "maliciously" "provide[d] a definite standard of conduct understandable by a person of ordinary intelligence." Id. at 314. The court concluded that it did, stating that "[m]alice means ill will, hatred, spite, an evil intent." Id. That definition of malice has since been consistently employed in aggravated child abuse cases. E.g., Freeze v. State, 553 So.2d 750 (Fla. 2d DCA 1989); Moakley v. State, 547 So.2d 1246 (Fla. 5th DCA 1989). Notwithstanding the definition adopted in Gaylord, however, without explanation, the standard jury instruction on aggravated child abuse includes a different definition "`Maliciously' means wrongfully, intentionally, without legal justification or excuse." Fla. Std. Jury Instr. (Crim.) 227.
The difference between the definition adopted in Gaylord and that included in the standard jury instruction is significant. The former is generally referred to as actual malice, or malice in fact; whereas the latter is generally referred *1089 to as legal, or technical malice. See Huntley v. State, 66 So.2d 504, 507 (Fla. 1953); Ramsey v. State, 114 Fla. 766, 154 So. 855, 856 (1934). See also 52 Am.Jur.2d, Malice § 1 at 161-62 (1970); Black's Law Dictionary 956-58 (6th ed.1990). Actual malice, or malice in fact, requires proof of evil intent or motive. Ramsey, 154 So. at 856. In contrast, legal malice merely requires proof of an intentional act performed without legal justification or excuse. Id. Legal malice may be inferred from one's acts, and does not require proof of evil intent or motive. Black's Law Dictionary 958 (6th ed.1990).
As best we have been able to determine, the standard instruction on aggravated child abuse was one of the standard instructions initially adopted by the court in 1981, see In the Matter of the Use by the Trial Courts or the Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla.1981), and has never been subsequently amended....
* * *
We hold that the trial court erred when it gave the jury the definition of "maliciously" included in the standard instruction, rather than that adopted by the court in Gaylord, and requested by appellant. The instruction given permitted the jury to return a guilty verdict based upon a finding of only legal, or technical, malice, rather than actual malice, or malice in fact. The effect of the error was to permit the jury to return a guilty verdict without finding that appellant actually harbored "ill will, hatred, spite, [or] an evil intent" when she punished her son, thereby reducing the state's burden of proof on an essential element of the offense charged.
753 So.2d at 728.
In Reed, no objection to the standard instruction had been interposed and the appellate court held that the improper instruction was not fundamental error. However, the court went on to state that any error would have been harmless given the overwhelming evidence of the defendant's guilt and the fact that the prosecutor did not make the inaccurate instruction a feature of his closing argument.
The state here points out that Gaylord involved an attack on a prior version of section 827.03 against a vagueness challenge and that the definition of "maliciously" adopted therein has never been adopted by the supreme court in the jury instructions. This, however, appears to be nothing more than an oversight. The state's additional argument that the trial court's inclusion of the words "and intentionally" after the word "maliciously" cured any deficiency lacks merit. Wrongful and intentional acts do not necessarily equate to acts done maliciously.
Nevertheless, the deficiency in the instruction, while error, did not constitute harmful error. Unlike in Young and Reed, Adams was alternatively charged with aggravated child abuse by willful abuse causing great bodily harm, etc. The instructions relative to this theory of prosecution are unchallenged. The evidence of willful infliction of great bodily harm, etc. is over-whelming. Any jury which took its oath seriously[4] had to return a verdict finding the defendant guilty of willful abuse causing great bodily harm, etc. The instruction *1090 defining "maliciously" was erroneous but had no effect on the verdict.
In San Martin v. State, 717 So.2d 462, 470 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999), our supreme court noted that while a general guilty verdict must be set aside where the conviction may have rested on an unconstitutional ground or a legally inadequate theory, reversal is not warranted where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternate theory of guilt for which the evidence was sufficient. The court in San Martin affirmed the defendant's conviction for first degree murder despite finding that the evidence was insufficient to prove premeditation and that it was error to instruct the jury on premeditation. The court explained that the defendant had been charged with first degree murder with premeditation as well as with felony murder and that the error was harmless because the evidence supported conviction for felony murder.
There is simply no chance here that the erroneous instruction contributed to the verdict. Adams was properly convicted of aggravated child abuse based upon the overpowering evidence that he willfully abused the child victim causing her great bodily harm.
Adams was also charged with first degree murder based upon a premeditation theory as well as a felony murder (aggravated child abuse) theory. He argues that the evidence of premeditation was insufficient and requires reversal of his conviction for first degree murder. However, since Adams' conviction for aggravated child abuse is affirmed, the conviction for first degree murder is likewise sustained. See San Martin.
Even if we were to reach the issue of premeditation, the state presented evidence from which the jury could have rejected Adams' claim that he acted out of rage. See Jeffries v. State, 797 So.2d 573 (Fla.2001). Premeditation is defined as "a fully-formed conscious purpose to take a human life, which exists in the mind of the perpetrator for a sufficient length of time to permit reflection, and in pursuance of which an act of killing ensues." Sireci v. State, 399 So.2d 964 (Fla.1981). Premeditation may "be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." DeAngelo v. State, 616 So.2d 440, 441 (Fla.1993). The period between a struggle, beating and actual death, however small, may be sufficient time for the assailant to reflect upon his actions and support a finding of premeditation. Wysocki v. State, 715 So.2d 346 (Fla. 4th DCA 1998). See Dupree v. State, 615 So.2d 713 (Fla. 1st DCA), rev. denied, 623 So.2d 495 (Fla.1993).
The supreme court has repeatedly emphasized when considering death by brutal beating that premeditation may be inferred from the manner in which the homicide was committed and the nature and manner of the wounds. See, e.g., Bradley v. State, 787 So.2d 732 (Fla.2001); Taylor v. State, 583 So.2d 323 (Fla.1991); Heiney v. State, 447 So.2d 210 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984).
This was not a situation where the victim died from a swift and sudden blow. The beating of six year old Kayla was incredibly brutal. While the attack could have been carried out "as quickly as someone could move," Kayla suffered from widespread bruising over her entire body which, the pathologist testified, could only have occurred before she died (since following death, a body cannot bruise). The *1091 extensive injuries could not have been inflicted in seconds. Further, Adams' comments after the savage attack reveal a long-standing animosity toward the child victim. Finally, after learning of the attack, the victim's stepmother discovered that the telephones in the house had been unplugged and when she tried to call 911 for assistance, she was threatened by Adams.
Based upon all this evidence, the jury could have rejected the defendant's claim that he acted out of rage and instead concluded that he had formed a conscious purpose to kill young Kayla.
AFFIRMED.
HARRIS and PETERSON, JJ., concur.
NOTES
[1] Adams was also convicted of tampering with evidence and obstructing a law enforcement officer without violence. He raises no challenges on appeal to these convictions.
[2] Count 2 of the indictment charged aggravated child abuse:

and the Grand Jurors, under oath as aforesaid do further present that Richard Lee Adams, in the County of Lake and the State of Florida, on November 25, 1998, in the County and State aforesaid did unlawfully and maliciously punish, or did willfully abuse Kayla Victoria McKean, a person under the age of eighteen (18) years, date of birth: January 13, 1992, by striking, kicking and stomping upon Kayla Victoria McKean, thereby causing her great bodily harm, permanent disability, or permanent disfigurement, in violation of Florida Statute 827.03(2)(b)....
[3] Fla. Std. Jury Instr. (Crim.), p. 227.
[4] See Florida Rule of Criminal Procedure 3.360 entitled "Oath of trial jurors": "Do you solemnly swear that you will well and truly try the issues between the State of Florida and the defendant and render a true verdict according to the law and the evidence, so help you God?"