SHARP, W„ J.
Skanes appeals from his judgment and sentence for first degree murder,[1] following a jury trial. He was sentenced to life in prison. We affirm.
The evidence presented against Skanes in this ease was substantial. Skanes’ former girlfriend (Thomas), who had lived with him for three of the five years preceding the crime, testified Skanes was jealous of her new boyfriend, and that he had threatened her to try to keep her from having the new boyfriend, the victim, in her apartment. Late at night while she was in her apartment with her young children and new boyfriend, she heard Skanes’ voice calling for her from the kitchen where he was apparently holding the victim at gunpoint. Fearful for her life, she closed the bedroom door where she was with her two young children. She heard the fatal shots and, at her eight-year-old daughter’s urging, jumped out of the bedroom window, minutes before Skanes came looking for her, gun in hand, threatening to kill her also. The daughter (K.) testified as to all of this, and a neighbor (Butler) testified Skanes was present at the apartment house complex twenty minutes before the shooting. Skanes’ sole defense was that he was somewhere else at the time the crime was committed.
Skanes raises three issues on appeal: first, that the court violated the “corpus delicti ” rule in allowing Thomas to testify that he told her “you got my messages,” on the evening of the shooting; second that the court erred in failing to direct a verdict on premeditated murder; and third, that the prosecutor made improper statements during closing argument, the cumulative effect of which deprived Skanes of a fair trial.
With regard to the first ground, this issue was not raised nor argued to the trial court. Defense counsel objected on the basis the statement was irrelevant. In order to be “preserved for appellate review,” an objection to admission of evidence or testimony must fairly inform the trial court, in a general way, the reason for the objection. State v. Clay, 780 So.2d 269 (Fla. 5th DCA 2001); State v. Amodeo, 750 So.2d 664 (Fla. 5th DCA 1999).
As to the second ground, Skanes argues that although the state’s evidence presented at trial was consistent with first degree (premeditated) murder, it was also consistent with second degree murder (depraved mind). Since there was a reasonable hypothesis of depraved mind murder, the trial court should have granted his motion for acquittal as to first degree murder.
Proof of premeditation requires proof that the defendant, at the time the crime was committed, had a fully formed, conscious purpose to kill, which existed for a sufficiently long period of time to permit deliberation or reflection. In this case, the state’s evidence was circumstantial. Evidence from which premeditation can be inferred includes the nature of the instrument used to kill (here a loaded firearm), presence of provocation or motivation (jealousy), previous difficulties between the parties (Skanes’ threats), the manner in which the homicide was committed (several minutes in the kitchen in which the victim was heard to be urging Skanes to back off and put the gun down), and the nature and the manner in which the wounds were inflicted (victim shot four times, once in the forehead). Blackwood v. State, 777 So.2d 399 (Fla.2000), cert. denied, — U.S. -, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001); Miller v. State, 770 So.2d 1144 (Fla.2000).
*1105 If the state relies on circumstantial evidence to prove premeditation, it must be inconsistent with every other reasonable inference. The evidence in this case shows that Skanes had a fully formed conscious purpose to kill Thomas’ new boyfriend, which existed for a sufficiently long time to permit reflection and deliberation. Had Thomas not jumped out the window, it might have been a double homicide. The evidence was indeed not only sufficient to establish premeditation, but it was inconsistent with any other reasonable inference. See, e.g. Blackwood; Dufault v. State, 800 So.2d 647 (Fla. 5th DCA 2001); Adams v. State, 799 So.2d 1084 (Fla. 5th DCA 2001); Cummings v. State, 696 So.2d 1306 (Fla. 5th DCA 1997).
Finally, Skanes argues the prosecutor made numerous improper comments during closing argument. Defense counsel did not object to all of these comments, but Skanes contends cumulatively they constitute fundamental error. It does appear the prosecutor improperly vouched for the credibility and veracity of Thomas’ daughter, who was nine-years-old when she testified at the trial, as well as Butler. However, we do- not think the comments rise to the level of fundamental error, given the overwhelming evidence against Skanes. Further, some of the comments objected to in the brief merely point out inferences which could be drawn from the evidence and address suggestions on the part of the defense that Thomas and her daughter could not have identified the person in the kitchen, and later in the bedroom, as Skanes.
Skanes is correct that the prosecutor incorrectly told the jury Thomas testified Skanes told her: “You got my messages, and you know what will happen.” Thomas did not say Skanes said “and you know what will happen.” The defense did object to this and'the trial court instructed the jurors that if their recollection of the evidence differed from that of counsel, they should disregard counsel’s recollection. The court reiterated the only people who can give evidence at trial are the witnesses, not the lawyers. With that instruction, the court overruled the objection.
In reviewing errors made by a trial court regarding the overruling of objections to improper comments made during closing argument, the standard of review is abuse of discretion. Card v. State, 803 So.2d 613 (Fla.2001), pet. for cert. filed (U.S. March 20, 2002) (No. 01-9152); McArthur v. State, 801 So.2d 1037 (Fla. 5th DCA 2001). In a closer case, the misstatement of testimony during closing argument may prove to be reversible error.[2] However, here, the trial court’s instruction served to reduce the impact of the misstatement. The misstatement was, in fact, a logical inference one could draw from Skanes’ otherwise (on the surface) innocuous statement (“you got my messages”). Used in the context of Skanes’ jealousy and conflict with Thomas because she had found a new man, the words take on a much more ominous meaning not inconsistent with a direct threat.
AFFIRMED.
THOMPSON, C.J., and PLEUS, J., concur.

. § 782.04(l)(a)l„ Fla. Stal.

. See State v. Cutler, 785 So.2d 1288 (Fla. 5th DCA 2001):